**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Michael J. SWIATEK, Defendant-Appellant.**

No. 86–1872.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1987.

Decided May 13, 1987.

Allan A. Ackerman, Allan A. Ackerman, P.C., Chicago, Ill., for defendant-appellant.

John L. Burley, U.S. Dept. of Justice Strike Force, Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

Michael Swiatek was sentenced to twenty years imprisonment for dealing in firearms and explosives. He argues on appeal that his conviction should be reversed because the government's conduct during its undercover investigation of his activities was outrageous, and because the district court made numerous errors during his trial which denied him a fair trial. We reject these contentions, and affirm Swiatek's conviction.

I.

The Bureau of Alcohol, Tobacco, and Firearms ("ATF") began to investigate Swiatek in the spring of 1984, after Swiatek's name came up in conversations between ATF agents and Gene Webb. Webb,

a man with a criminal record of robbery and burglary, had agreed after his release from prison in early 1984 to cooperate with the ATF by introducing Special Agent John Mazzola, who was working undercover, to some of his past associates. In return, the ATF paid Webb a weekly fee and a monthly subsistence allowance, helped him apply for public assistance, and paid his rent and telephone bills.

On June 12, 1984, Webb and Special Agent Mazzola drove to the restaurant Swiatek managed, and Webb introduced Mazzola to Swiatek as Webb's partner, "Johnny." This was the first in a series of meetings between the three men which led to the indictment in this case.

Throughout the summer and fall of 1984, Mazzola and Webb made periodic visits to Swiatek's restaurant. They represented themselves as amateur thieves, and repeatedly asked Swiatek for help and advice concerning the procurement of firearms and explosives. After some initial reluctance, Swiatek agreed to help Mazzola and Webb, and on five occasions he sold them firearms and explosives.

On August 29, 1985, a federal grand jury returned an indictment against Swiatek for the five weapons sales, and for unlicensed dealing in firearms and explosive materials.[1] Before trial, Swiatek informed the district court that he intended to argue both that he was entrapped and that the government's conduct during its investigation was so outrageous that it had violated his Fifth Amendment due process rights. He moved for a pretrial hearing on the outrageous conduct issue. The district court denied his motion, ruling that there was insufficient evidence of a Fifth Amendment violation.

At trial, the principal evidence against Swiatek consisted of the physical evidence of the guns and bombs he had sold, eigh-

teen tape-recorded conversations with Special Agent Mazzola and Gene Webb concerning these sales, and the testimony of Mazzola and Webb. Swiatek submitted proposed jury instructions on both his entrapment theory and his outrageous conduct theory. The district court rejected Swiatek's proposed instructions on his outrageous conduct theory, finding that the theory was not supported by sufficient evidence. However, the court did instruct the jury on Swiatek's entrapment defense. The jury found Swiatek guilty on all counts but one.

Swiatek moved for a post-trial hearing on the outrageous conduct issue, and the court denied his motion. On May 22, 1986, the district court sentenced Swiatek to twenty years imprisonment, to run concurrently with a five year sentence imposed on Swiatek in an unrelated case, and fined Swiatek $200. This appeal followed.

## II.

Swiatek's claims on appeal fall into two categories. First, Swiatek argues that the government's conduct in investigating him was so outrageous that it violated his due process rights, and therefore his indictment should have been dismissed. In connection with this claim, Swiatek argues that the district court should have held a pretrial or post-trial hearing on the question of outrageous government conduct, and that the court should have instructed the jury as to this issue.

Second, Swiatek objects to the way in which his trial was conducted. He argues that the district court made numerous errors which denied him a fair trial, and that his conviction should therefore be overturned. We reject each of these claims and affirm Swiatek's conviction.

---

1. Specifically, Swiatek was charged with engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. §§ 922(a)(1) and 924(a) (Count One); engaging in the business of dealing in explosive materials without a license in violation of 18 U.S.C. §§ 842(a)(1) and 844(a) (Count Two); being a convicted felon and possessing a firearm in vio-

lation of 18 U.S.C.App. § 1202(a)(1) (Counts Three and Four); being a convicted felon and receiving a firearm in violation of 18 U.S.C. §§ 922(h) and 924(a) (Count Five); and possession of an unregistered firearm in violation of 26 U.S.C. §§ 5861(d) and 5871 (Counts Six and Seven).

### A.

We first address Swiatek's claim that the court erred in declining to hold an evidentiary hearing on the question of outrageous government conduct. Because we conclude, as did the district court, that there was insufficient evidence to justify even a hearing on this issue, we need not consider whether Swiatek's indictment should have been dismissed because of outrageous government conduct.

The doctrine of outrageous government conduct stems from a statement in *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), a case involving the entrapment defense. The Supreme Court found that the defendant in *Russell* was predisposed to commit the crime at issue, and therefore was not entrapped. However, the Court noted that it might "some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Id.* at 431–32, 93 S.Ct. 1643. This circuit has also left the possibility open, although we have never reversed a conviction on this ground. *United States v. Bruun*, 809 F.2d 397, 409 (7th Cir.1987).

■ A trial court need only grant an evidentiary hearing on the issue of outrageous government conduct when the defendant has presented specific facts that are sufficient to raise a significant doubt about the propriety of the government's actions. *See Owen v. Wainwright*, 806 F.2d 1519, 1523 (11th Cir.1986); *cf. United States v. Hamm*, 786 F.2d 804, 807 (7th Cir.1986) (to justify a suppression hearing, defendant must present facts that are "definite, specific, detailed and nonconjectural."). In this case, the district court's denial of a hearing on the question of out-

rageous government conduct was not error.

■ Swiatek moved for an evidentiary hearing twice: once before trial, and again after the trial. Both motions were based on the same allegations of government misconduct. Even after extensive pretrial discovery and a full trial, these allegations were not supported by sufficient facts to raise a significant doubt about the government's behavior.

Swiatek's first and strongest allegation on appeal is that he was "pre-targeted"—that is, vindictively singled out—by the ATF Strike Force, because of its failure to convict Swiatek in an earlier Strike Force prosecution. However, the only evidence to support this theory is the bare fact of a previous acquittal.

Second, Swiatek alleges that Webb, a "lifelong criminal," was paid on a contingent basis. However, there is no evidence in the record that the money Webb received from the ATF was contingent on Swiatek's conviction, or on Webb's testimony at trial.[2]

Third, Swiatek emphasizes the fact that Webb and Mazzola showed him jewelry and a car that they claimed they had stolen in an effort to get him to re-enter a life of crime. But there is nothing outrageous in the fact that Webb and Mazzola, while pretending to be thieves, exhibited these objects to Swiatek. "It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises." *Sorrells v. United States*, 287 U.S. 435, 441, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932).

Finally, Swiatek alleges that Webb was largely unsupervised, and calls our attention to testimony that Webb and Swiatek

---

**2.** Swiatek's reliance on *United States v. Cervantes-Pacheco*, 800 F.2d 452 (5th Cir.1986), is therefore inapposite. In *Cervantes-Pacheco*, the Fifth Circuit reversed a conviction for conspiring to possess and import marijuana on due process grounds, because of the government's use of a contingent fee arrangement under which "the quality of the informant's [trial] tes-

timony determined not only *whether* he would be paid but also *how much* he would be paid." *Id.* at 459 (emphasis in original). Here, Webb was merely supported by the ATF on a subsistence basis; he was not paid for his performance with any particular target. *See Owen v. Wainwright*, 806 F.2d 1519, 1522 (11th Cir.1986).

had both telephone and face-to-face contact in Special Agent Mazzola's absence. However, even if there were unsupervised meetings between Webb and Swiatek, the government did not utilize them in making its case against Swiatek.

Because Swiatek's allegations did not raise a significant doubt about the government's conduct, the district court did not err in denying Swiatek's motions for an evidentiary hearing.

### B.

Swiatek offered two instructions for submission to the jury concerning his theory of outrageous government conduct. The court did not instruct the jury at all on this theory, because it believed that the theory was supported by insufficient evidence. Swiatek challenges this failure to instruct as prejudicial error. We affirm the trial court's decision, on the broader ground that the issue of outrageous government conduct is not an issue for the jury.

■ All of the circuits that have considered the question have held that the issue of outrageous government conduct is not a jury question. *See, e.g., United States v. Salazar*, 720 F.2d 1482, 1488 (10th Cir.1983), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985); *United States v. Nunez-Rios*, 622 F.2d 1093, 1099 (2d Cir.1980); *United States v. Prairie*, 572 F.2d 1316, 1319 (9th Cir.1978); *United States v. Johnson*, 565 F.2d 179, 181–82 (1st Cir.1977), *cert. denied*, 434 U.S. 1075, 98 S.Ct. 1264, 55 L.Ed.2d 780 (1978); *United States v. Graves*, 556 F.2d 1319, 1322 (5th Cir.1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978); *United States v. Quinn*, 543 F.2d 640, 647–48 (8th Cir.1976). We agree with the conclusion of these cases. Whether the government has stepped beyond permissible constitutional bounds in attempting to enforce the law is a legal question, not a factual one. *See Johnson*, 565 F.2d at 181–82; *see also Hampton v. United States*, 425 U.S. 484, 497, 96 S.Ct. 1646, 1653, 48 L.Ed.2d 113 (1976) (Brennan, J., concurring) (*quoting Russell*, 411 U.S. at 441, 93 S.Ct. at 1647 (Stewart, J., dissent-

ing) ("[T]he determination of the lawfulness of the Government's conduct must be made—as it is on all questions involving the legality of law enforcement methods—by the trial judge, not the jury.")). Because the outrageous conduct issue was not a matter for the jury, Swiatek's theory of the defense objection is without merit.

### III.

### A.

Rule 404(b) of the Federal Rules of Evidence provides that evidence as to a person's other crimes, wrongs, or acts is inadmissible when offered merely to convince the jury that the person has a bad character and therefore probably committed the crime at issue. Rule 403 provides that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Swiatek alleges that the trial court, in admitting evidence of other bad acts, violated both rules.

"A district court has broad authority to control the admission of evidence ... that will not be disturbed on appeal unless an abuse of discretion is shown." *United States v. Harbour*, 809 F.2d 384, 387 (7th Cir.1987) (*quoting United States v. Rovetuso*, 768 F.2d 809, 815 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 838, 88 L.Ed.2d 809 (1986)). In *United States v. Shackleford*, 738 F.2d 776 (7th Cir.1984), we gave content to this abuse of discretion standard in the context of the admissibility of "other bad acts" under Rule 404(b). Under *Shackleford*, the admission of such evidence will be approved if:

(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue ..., (3) the evidence is clear and convincing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

738 F.2d at 779 (citation omitted); *see also United States v. Draiman,* 784 F.2d 248, 254 (7th Cir.1986).

In this case, Swiatek objected at trial to the district court's admission of evidence concerning: Swiatek's purchase of supposedly stolen jewelry; his apparent willingness to deal with stolen cars; the fact that someone Webb met at Swiatek's restaurant was a convicted felon; the fact that Swiatek had witnessed an explosion in the past; the fact that he had checked the fuse on an explosive device; his statement that he had a garage full of guns before he went to prison; the fact that he had committed several armed robberies; and the fact that he went to prison in about 1969. We hold that the trial court's admission of some of this evidence was indeed erroneous, but that we need not reverse Swiatek's conviction, because the evidence against him was overwhelming. *See United States v. Hasting,* 461 U.S. 499, 512, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *United States v. Gruttadauro,* 818 F.2d 1323, 1327 (7th Cir. 1987).

## I.

At trial, the government introduced evidence that on one occasion Webb and Mazzola told Swiatek that they had stolen five rings. They showed these allegedly stolen rings to Swiatek and asked him for advice. Swiatek purchased the rings for $300, remarking that he would try to resell them. On another occasion, Webb and Mazzola told Swiatek they had stolen a car. Some days later, they drove this car by Swiatek's restaurant, and Swiatek gave them advice about dealing with stolen cars.

The government states that it introduced the jewelry evidence to explain the background and circumstances of the crime charged, *see United States v. Jordan,* 722 F.2d 353, 356 (7th Cir.1983), and to put the relationship between Swiatek, Mazzola, and Webb into perspective, *see United States v. Balistrieri,* 778 F.2d 1226, 1231 (7th Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3284, 91 L.Ed.2d 573 (1986). The judge, when admitting the jewelry evidence, stated that "this particular transaction is so inextricably intertwined with the crimes that are charged here, they really fall within the exception to 404(b) of a common plan."

■ We disagree. Evidence that Swiatek was willing to fence jewelry is not probative of a plan to sell firearms and explosives. On the contrary, the most likely inference from this evidence is that Swiatek was a person who dealt in contraband, and that his sale of firearms and explosives to Special Agent Mazzola was in conformity with his criminal character. This is exactly the type of inference Rule 404(b) was intended to prevent. The district court's characterization of this evidence as "inextricably intertwined" with the transactions at issue was also incorrect. This is not a case where excluding the evidence "would have left a 'chronological and conceptual void' in the story of the ordeal," *United States v. Vretta,* 790 F.2d 651, 656 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 179, 93 L.Ed.2d 115 (1986) (*quoting United States v. Hattaway,* 740 F.2d 1419, 1425 (7th Cir.), *cert. denied,* 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984)). The jewelry evidence was therefore inadmissible under the first prong of the *Shackleford* test.

■ The evidence regarding the stolen car suffers from the same defect. The trial court admitted this evidence because it believed that the evidence was "inextricably intertwined" with a negotiation for guns that took place the same day, "to the point that it really becomes part of the same transaction." As the trial court correctly pointed out, this evidence is less prejudicial to Swiatek than the jewelry evidence, because Swiatek merely offered advice about the car rather than participating in what he believed to be an illegal transaction. However, like the jewelry evidence, the car evidence is not probative of Swiatek's intent to sell firearms to Mazzola and Webb; it is simply probative of Swiatek's criminal propensities. Moreover, evidence of this incident could have been excluded without damage to the jury's understanding of the gun transactions that lay at the heart of this case.

Finally, Webb testified on direct examination that a man he met on one occasion in Swiatek's restaurant was a convicted felon. The government introduced this testimony "to demonstrate that the atmosphere at [Swiatek's restaurant] with these convicted felons being there was not created by the Government." The district court admitted this evidence over Swiatek's objection that "That's called guilt by association."

■ On appeal, the government suggests that evidence of Swiatek's other bad acts was admissible because Swiatek's theory of defense was entrapment. Under Rule 404(b), although evidence of other bad acts is inadmissible to prove bad character, it is admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R. Evid. 404(b). Evidence of other bad acts is also admissible to prove predisposition in an entrapment case, because in such a case the defendant's predisposition to commit the charged crime is legitimately at issue. *See United States v. Moschiano*, 695 F.2d 236, 243 (7th Cir.1982), *cert. denied*, 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 111 (1983); *United States v. Murzyn*, 631 F.2d 525, 528 n. 2 (7th Cir.1980), *cert. denied*, 450 U.S. 923, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981); *see also Sorrells v. United States*, 287 U.S. 435, 451, 53 S.Ct. 210, 77 L.Ed. 413 (1932) ("[I]f the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue.").

However, all character evidence does not automatically become admissible once a defendant has raised the entrapment defense. Rather, the evidence remains subject to the other three elements of the *Shackleford* test. In this case, even if the evidence at issue is admissible under the first prong of *Shackleford* it is inadmissible under the second prong, which requires that the other act be similar enough to the crime charged to be relevant to the matter in issue.

Character evidence that is offered to prove the defendant's predisposition to commit the crime charged may be found inadmissible if it is "indicative of character traits that are only minimally relevant to the accused's predisposition." *Murzyn*, 631 F.2d at 529. Here, the evidence of the jewelry and car incidents, and Webb's testimony that a convicted felon was present at Swiatek's restaurant, were only minimally relevant to Swiatek's predisposition to sell firearms. *Cf. United States v. Bramble*, 641 F.2d 681, 682–83 (9th Cir.1981), *cert. denied*, 459 U.S. 1072, 103 S.Ct. 493, 74 L.Ed.2d 635 (1982) (in entrapment case, conviction for sale of cocaine reversed where evidence of defendant's prior conviction for possession of marijuana admitted to show his propensity to sell cocaine). The admission of this evidence was therefore an abuse of discretion under the second prong of *Shackleford*.

■ Despite these errors, however, we need not reverse Swiatek's conviction, because the other evidence against him was overwhelming. The jury heard a total of eighteen tape-recorded conversations in which Swiatek offered advice about firearms and explosives, and made arrangements to sell them to Mazzola and Webb. Mazzola and Webb testified as to the circumstances of each sale. Their stories were almost identical, and their testimony was not impeached on cross-examination. Therefore, even if the district court had excluded the evidence as to the stolen jewelry, the stolen car, and the convicted felon in Swiatek's restaurant, Swiatek's conviction was "inevitable," *United States v. Beasley*, 809 F.2d 1273, 1280 (7th Cir.1987), because the evidence against him was overwhelming. *See United States v. Gruttadauro*, 818 F.2d 1323, 1327 (7th Cir.1987).

### 2.

Swiatek also objects to the introduction of Agent Mazzola's testimony that Swiatek described to him a time in the past when Swiatek witnessed an explosion. After describing this event, Swiatek remarked to Mazzola, "There's nothing like an explosion.... It's beautiful." In addition, Mazzola testified that Swiatek told him about once having checked the fuse on an explosive device. We agree with the govern-

ment that the admission of this evidence was not an abuse of discretion.

■ First, this evidence was probative of Swiatek's predisposition to commit the charged crimes, which, as we have seen, was legitimately at issue in this case.

[T]here are cases in which testimony that reports or describes uncharged misconduct is not offered for the purpose of supporting an inference from the misconduct to the defendant's motive, opportunity, intent, etc., but for some other purpose. In such a case, the probative value of the testimony ... does not depend on the actual existence of the misconduct it reports.

*United States v. Byrd*, 771 F.2d 215, 221 (7th Cir.1985). The present case is such a case. Even if Swiatek's statements were not based on fact, a jury could conclude from this evidence that Swiatek was eager to impress Mazzola with his knowledge and expertise. This inference in turn supports the proposition that Swiatek was predisposed to sell explosives to Mazzola and Webb.

Second, the evidence concerns explosives, the subject matter of the crime charged. These statements, made contemporaneously with Swiatek's gun negotiations with Mazzola and Webb, are also close enough in time to be relevant to the matter in issue. This evidence therefore meets the second prong of *Shackleford.*

Third, the evidence was clear and convincing. In this case, Mazzola testified as to Swiatek's remarks, and his testimony was not impeached on cross-examination. Finally, the probative value of this evidence outweighed the danger of unfair prejudice. We conclude that the district court did not abuse its discretion in admitting evidence of Swiatek's testimony as to his past experience with explosives.

■ Swiatek's testimony about his garage full of guns "before he went to prison" and his experience with firearms in the course of several prior armed robberies

was similarly admissible to prove his predisposition to deal in guns and firearms. This evidence was not directed toward proving the truth of the matters Swiatek asserted, but rather toward proving Swiatek's repeated and intense efforts at self-promotion regarding his knowledge of, and experience with, guns. These efforts were in turn probative of Swiatek's propensity to sell firearms to Mazzola and Webb. Because this evidence also complies with the remaining three elements of *Shackleford,* the admission of the evidence was not an abuse of discretion.[3]

### 3.

■ Finally, Swiatek objects to the admission of evidence that he went to prison in about 1969. Because Swiatek was charged with being a convicted felon and possessing a firearm (Counts Three and Four), and being a convicted felon and receiving a firearm (Count Five), Swiatek's prior felony conviction was admissible to prove a necessary element of the government's case. In *United States v. Allen,* 798 F.2d 985, 1001 (7th Cir.1986), we held that a thirty-eight year old conviction was admissible to prove the offense of transporting explosives by a convicted felon under 18 U.S.C. §§ 842(i) and 844(a). The seventeen year old conviction in this case was close enough in time, under *Allen,* to the matter in issue. Moreover, this evidence was proved by direct and unimpeached testimony. " 'Direct testimony of the defendant's participation in a prior crime ... is ordinarily held to satisfy the clear and convincing standard.' " *United States v. Harbour,* 809 F.2d 384, 388 (7th Cir.1987) (*quoting United States v. Dolliole,* 597 F.2d 102, 107 (7th Cir.), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2894, 61 L.Ed.2d 318 (1979)). Finally, the probative value of this evidence clearly outweighed the danger of unfair prejudice. Its introduction therefore did not violate Rule 404(b).

---

**3.** We note, however, that the prejudicial potential of the evidence could have been further mitigated by a limiting instruction directing the jury to disregard the truth or falsity of the remarks. *See Byrd,* 771 F.2d at 222.

### B.

Swiatek's next claim concerns prosecutorial misconduct. Swiatek argues that the government, through Special Agent Mazzola and the prosecutor, attempted to link Swiatek to organized crime at two points during the trial. First, Mazzola, when asked on cross-examination whether Swiatek had been a "target" of the Strike Force, answered, "He has been identified ... as a significant member of organized crime in Chicago." Swiatek immediately objected to this remark. The district court admonished the witness to answer only the question he was asked, struck the answer and instructed the jury to disregard it, and denied the defense's motion for a mistrial. Although this remark had obvious prejudicial potential, in light of the prompt action of the court we do not find it to be, as Swiatek argues, an "evidentiary harpoon" that poisoned the entire trial.

Second, in his closing argument, the prosecutor referred to a conversation in which Swiatek told Mazzola, "These guys told me not to mess around with that stuff anymore," and made a gesture as if curling a moustache. Swiatek tells us that it is well known that members of organized crime are known on the street as "moustache guys." We agree with the district court, however, that the reference to moustaches was ambiguous. This remark, and its repetition by the prosecutor, did not poison Swiatek's trial. Nor is there any other, independent evidence that the government was deliberately trying to inject the issue of organized crime into this case. The district court therefore acted within its discretion in denying Swiatek's motion for a mistrial based on these remarks. *See United States v. Fulk*, 816 F.2d 1202, 1205–06 (7th Cir.1987).

### C.

Swiatek's last claim also concerns prosecutorial misconduct. He argues that a number of remarks made by the prosecutor in his rebuttal closing argument unfairly prejudiced the jury against him. We agree with the government's concession that "the rebuttal could have been more artful." However, the prosecutor's remarks did not deprive Swiatek of a fair trial.

In considering a claim of improper argument by the prosecution, this court follows a two-step analysis. First, we determine whether, considered in isolation, the challenged remark was improper. If so, we reexamine the improper remark in light of the entire record to determine whether the remark deprived the defendant of a fair trial. As part of this second step, we consider whether and to what extent the improper remark was provoked by the defense counsel's argument—the so-called "invited response" doctrine. *See United States v. Torres*, 809 F.2d 429, 445–46 (7th Cir.1987) (Flaum, J., concurring). In this case, only three of Swiatek's prosecutorial misconduct claims have merit.

First, the prosecutor pointed out that Agent Delorto was missing from the courtroom because his father had died in Florida. This remark was improper because it was irrelevant, and may have drawn the jury's sympathy to the government. However, when examined in light of the entire record it is clear that the remark was an invited response to the defense's repeated suggestions that the government was "embarrassed" by Agent Delorto's absence. Moreover, the district court properly responded to this remark by admonishing the prosecutor and directing the jury to disregard the comment. We conclude that this remark, although improper, did not deprive Swiatek of a fair trial.

Second, the prosecutor stated:

Defense counsel talks about the FBI and the Chicago Police Department and the IRS. I have respect for those agencies. I have respect for those agents. All citizens do. The offenses in this case were within the jurisdiction of the Bureau of Alcohol, Tobacco and Firearms. That's the agency of Elliot Ness. And most citizens have respect for that agency as well.

These remarks were inappropriate. However, Swiatek did not object to these remarks at trial, and we therefore must

evaluate them under the plain error standard. "[T]he plain error exception to the contemporaneous objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985) (*quoting United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)).

The remarks at issue here were made in the context of a sustained attack by Swiatek's counsel on the government's integrity. "We have held that, where defense counsel 'struck the first blow' by impugning the integrity of the government, '[t]he Government's response was invited....'" *United States v. Peco,* 784 F.2d 798, 809 (7th Cir.), *cert. denied sub nom. Hoffman v. United States,* — U.S. —, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986) (*quoting United States v. West,* 670 F.2d 675, 689 (7th Cir.), *cert. denied sub nom. King v. United States,* 457 U.S. 1124, 102 S.Ct. 2444, 73 L.Ed.2d 1340 (1982)). When these invited remarks are viewed against the entire record, we conclude that the remarks, "although inappropriate and amounting to error, were not such as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *Young,* 105 S.Ct. at 1047.

Finally, Swiatek objects to the prosecutor's argument that Agent Mazzola had no reason to lie and risk his career and reputation. This comment was clearly improper when considered in isolation, because it amounted to vouching for the credibility of a witness. *See Young,* 105 S.Ct. at 1048; *Peco,* 784 F.2d at 809. However, Swiatek failed to object to this remark at trial, and we therefore may not reverse his conviction on this ground unless the remark was a plain error that deprived Swiatek of a fair trial. The prosecutor made

this remark in response to the defendant's assertion that government witnesses lie with impunity because they are never indicted for perjury. When balanced against the defense's argument and considered in light of the entire record, we conclude that the remark did not deprive Swiatek of a fair trial.

We stress, as we have so often in the past, that by holding that the prosecutor's remarks did not deny the defendant a fair trial, we do not intend to condone them. "The doctrine of invited response is not a safety zone within which prosecutors may seek refuge." *Torres,* 809 F.2d at 447 (Flaum, J., concurring). The government's rebuttal closing argument in this case was marked by repeated objections from defense counsel and admonitions by the court. The fact that a prosecutor's comments may have been provoked by the defense is at best only an excuse—not a justification—for careless and unprofessional tactics.

## IV.

Swiatek was not entitled to an evidentiary hearing or jury instructions on the issue of outrageous government conduct. The district court erred in admitting evidence of Swiatek's propensity to deal in stolen jewelry, his knowledge of stolen cars, and the presence of a convicted felon in his restaurant, but this error was not reversible error in light of the strength of the government's case. Finally, the prosecution's conduct during its presentation of evidence and closing argument did not rise to the level of reversible error. Swiatek's other claims are without merit.[4] The judgment of the district court is, therefore, AFFIRMED.

4. First, Swiatek objects to the fact that the jury was shown a videotape of the bombs that Swiatek sold to Mazzola being exploded, and saw and heard the actual explosion and the background sound of a seagull. The government claims the videotape was probative of elements of Counts Two, Six, and Seven. Although Swiatek did not object to the introduction of the tape

at trial, he argues that its admission was plain error. He points out that he stipulated to the explosive character of the bombs, and the videotape therefore added nothing to the government's case. It may be true that the introduction of this evidence was not essential, but its admission was not plain error. A party may insist on proving a fact even when there has

been an offer to stipulate. "[A] cold stipulation can deprive a party 'of the legitimate moral force of his evidence' ... and can never fully substitute for tangible, physical evidence or the testimony of witnesses." *United States v. Allen,* 798 F.2d 985, 1001 (7th Cir.1986) (*quoting United States v. Grassi,* 602 F.2d 1192, 1197 (5th Cir.1979), *vacated on other grounds,* 448 U.S. 902, 100 S.Ct. 3041, 65 L.Ed.2d 1131 (1980) (citation omitted). Moreover, in this case the videotape was redacted to eliminate the comments of the law enforcement personnel who detonated the bombs. In light of the steps the district court took to mitigate the prejudicial potential of this evidence, its admission was not plain error.

Second, Swiatek argues that he cannot be convicted and sentenced for both dealing and possession of firearms. This argument is foreclosed by *Allen,* 798 F.2d at 1000.