**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose MARTINEZ, Defendant–Appellant.**

**No. 89–3733.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 14, 1990.
Decided Aug. 1, 1991.

Patricia B. Holmes (argued), Crim. Div., Barry R. Elden, Asst. U.S. Attys., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Elpidio Villarreal (argued), Gary Senner, Petra A. Harris, John I. Grossbart, Sonnenschein, Nath & Rosenthal, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, and POSNER and KANNE, Circuit Judges.

KANNE, Circuit Judge.

An undercover agent from the Bureau of Alcohol, Tobacco and Firearms accompanied a confidential informant to a gas station in Chicago for a drug buy. The informant had been offered an opportunity to buy cocaine. When the agent and the informant got to the station, the attendant counted the money for the buy. Shortly thereafter, Jose Martinez pulled into the station. In a recorded conversation, Martinez told the agent he could not complete the transaction on that date. Three days later, Martinez phoned the agent and made arrangements to meet the following afternoon. After the agent contacted Martinez by beeper the following morning, they finalized plans for the next meeting.

Martinez met with the agent and the informant, and placed a phone call. Shortly thereafter, three other men arrived in a car and spoke with Martinez. Martinez told the agent to follow them to another location. Along the way, the group stopped and Julio Mayoral, one of the co-conspirators, made several calls from a phone booth. The group later stopped at a bar. Mayoral went into the bar. At that time, two men left the bar and went into a building down the street. After a few minutes, they returned. Mayoral emerged from the bar and got into the car with Martinez. Then Martinez got out of the car, walked over to the agent's car, and placed a small amount of white powder into the agent's hand. Mayoral approached and asked whether the agent was pleased with the sample and would like the rest of the cocaine. The agent signified that the sample was satisfactory and that he would indeed take the rest of the cocaine. Martinez told the agent to discard the sample and told him that the quality of the cocaine would improve in the future, and that future transactions would be quicker and easier. Mayoral and the agent went inside the bar, and Martinez remained with the car.

Eventually, a plastic bag containing 501 grams of 52% pure cocaine was shown to the agent by another co-defendant. The agent told them he would go to his car to get the money. After leaving the bar, he gave a signal to the surveillance agents and the arrests were made.

Martinez and three co-defendants were each indicted with one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Three of the defendants, including Martinez, proceeded to trial. After the trial began, one of the co-defendants changed his plea to guilty. Part of the evidence presented by the government at trial were audio tape recordings made of conversations with various members of the conspiracy.

The jury found Martinez and a co-defendant guilty on both counts charged against each of them. During sentencing the district court determined that the proper level

for Martinez under the Sentencing Guidelines would be an offense level of 26, and a criminal history category of I, rendering a sentencing range of 63–78 months. The court declined Martinez's suggestion to reduce the level for acceptance of responsibility. The court then sentenced Martinez to 63 months imprisonment.

Martinez appeals his conviction and sentence, raising four errors. He alleges the court erred in: failing to give limiting instructions regarding the transcripts of the tape recordings; giving the Seventh Circuit *Pinkerton* jury instruction; admitting hearsay testimony and allowing reference to items not in evidence during closing argument; and failing to reduce the offense level for his minimal participation. We address each of these in turn.

■ Martinez contends that it was error for the district court to admit into evidence—without limiting instruction—transcripts of audio tape-recorded conversations. Martinez argues on appeal that the court should have instructed the jury that the tapes, and not the transcripts, were the evidence that the jury should consider. Generally, the decision to admit into evidence written transcripts of tape-recorded conversations is within the discretion of the district court. *United States v. Camargo*, 908 F.2d 179, 183 (7th Cir.1990). More fundamentally, however, at trial Martinez did not request any limiting instruction regarding the use of the transcripts, nor did he object to the use of the transcripts. Therefore, Martinez has waived any argument before this court on this issue absent a showing of plain error. FED.R.CRIM.P. 52(b); *United States v. Henry*, 933 F.2d 553, 558 (7th Cir.1991); *Camargo*, 908 F.2d at 183; *United States v. Wynn*, 845 F.2d 1439, 1442–43 (7th Cir.1988).

■ We then turn to the issue of plain error. Plain error exists when there has been such a miscarriage of justice that, but for the error, Martinez probably would have been acquitted. *Henry*, 933 F.2d at 558; *United States v. Hagan*, 913 F.2d 1278, 1282 (7th Cir.1990). Martinez does not allege any discrepancies between the audio tapes and the transcripts—nor are we aware of any discrepancies. Martinez did not point out any detrimental effect caused by the admission of the transcripts which caused Martinez to be convicted where he otherwise would have been acquitted. In fact, in an effort to demonstrate to the jurors that Martinez did not participate in the drug transaction, Martinez's attorney made use of the transcripts by inviting the jurors during closing argument to examine the transcripts in their deliberations. There was no miscarriage of justice in admitting the transcripts and there was no plain error.

■ The next issue is whether the court improperly admitted hearsay evidence in the form of background testimony by the government agent. On direct examination, the government asked the undercover agent what he was investigating on the day he came in contact with the defendant. Defense counsel objected based on the hearsay rule. The government responded that the statement was not going to prove the truth of the matter asserted, but rather "to show what the agent was involved in and why he did what he did." The court then gave a limiting instruction, consistent with the proffer by the government, telling the jury that the information was being offered not for the truth of the matter, but to explain why the agent did whatever it was he did. The court then permitted the agent to answer the question. The agent responded that he had information that "*a man*" had offered to sell an informant one-half kilogram of cocaine.

Martinez urges us to apply *United States v. Mancillas*, 580 F.2d 1301 (7th Cir.), *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978). There we found to be inadmissible hearsay a government agent's testimony about a tip he had received in which the defendant was explicitly named as being involved in receiving a shipment of heroin. We noted that giving the jury a sense of the context of the activities to be described provided some incidental benefit. But we concluded that "[t]o allow testimonial repetition of a declarant's out-of-court charge that the defendant would engage or was engaged in

specific criminality would seem to create too great a risk that [the dangers of unfair prejudice, confusion of the issues, or misleading the jury set out in Federal Rule of Evidence 403] will actualize." *Mancillas,* 580 F.2d at 1310.

In *Mancillas,* the defendant was directly implicated by name in the tip. Here the only mention was of "a man." There was no indication (at the time the testimony was given) that among the males involved the reference was to Martinez. If the statement was offered to prove the truth of the matter asserted (the definition of "hearsay" under Federal Rule of Evidence 801(c)), then under these circumstances it would have been offered to show the gender of the individual offering to sell cocaine. There is no doubt this statement was offered and received in evidence as mere background information to place the actions of the agent in context.

Because we agree with the district court that the testimony was not hearsay because it was not offered for the truth of the matter asserted, the only determination left would be whether the evidence would be contrary to Federal Rule of Evidence 403. Any prejudice resulting from this statement in which none of the co-defendants is directly implicated does not substantially outweigh the probative value of evidence which provided the jury with information regarding how the investigation started and why the agent and the informant were going to the gas station with a large sum of money. With the number of males involved in this conspiracy, the number of male co-defendants directly on trial, the lack of explicit mention of anyone in the tip, and the limiting instruction given, we think the district court did not abuse its discretion in admitting this general statement regarding background of the investigation. Absent an abuse of discretion, we will not reverse a trial judge's decision regarding the admissibility of evidence. *United States v. Parkin,* 917 F.2d 313, 316 (7th Cir.1990).

■■ A corollary contention regarding this testimony is whether the government made an impermissible reference to it in closing argument. Closing arguments are limited to addressing facts in evidence. *United States v. Doyle,* 771 F.2d 250, 258 (7th Cir.1985). But, counsel may make arguments "reasonably inferred from the evidence presented." *Id.* (citations omitted). As we recently noted in *United States v. Rodriguez,* 925 F.2d 1049, 1055 (7th Cir. 1991), we review these challenged statements under the two-part test found in *United States v. Swiatek,* 819 F.2d 721, 730 (7th Cir.), *cert. denied,* 484 U.S. 903, 108 S.Ct. 245, 98 L.Ed.2d 203 (1987). "First, we determine whether, considered in isolation, the challenged remark was improper. If so, we reexamine the improper remark in light of the entire record to determine whether the remark deprived the defendant of a fair trial." *See also United States v. Gonzalez,* 933 F.2d 417, 430 (7th Cir.1991).

During closing, the Assistant U.S. Attorney said to the jury that "[the government agent] received information from an informant that Jose Martinez was interested in selling a half kilogram of cocaine for $10,-000." Of course, if in light of all the evidence presented at trial a reasonable inference could be drawn that Jose Martinez was "the man" referred to in the agent's actual testimony, then the comment was proper. The agent's testimony, initially received not to prove the matter asserted, could later be viewed as probative evidence regarding Martinez—if supported by additional non-hearsay evidence from which proper inference could be drawn.

We begin the examination of this issue by reviewing the agent's later testimony to see whether it is permissible to infer from that evidence that Jose Martinez was "the man" offering to sell the informant the cocaine. After his comment as to how the investigation started, the agent testified that he made arrangements through the informant to contact this man on June 12, at which time another man would count the money the agent was using to purchase the cocaine. On June 12, the agent and the informant went to the gas station. They met with the attendant, who counted the drug buy money. The attendant told the

416

agent that "his man" had been there earlier but that he left because the agent was late. The agent further testified that after about a one-half hour wait Martinez arrived in a car. The agent recognized that car as having passed them going the opposite direction as the agent and the informant were on their way to the gas station. Martinez told the agent that they could not complete the transaction that day. Later the same week, Martinez called the agent to set up the time and place to meet to complete the drug transaction. This meeting was the one described above that led to the transaction at the bar involving one-half kilogram of cocaine. There is sufficient non-hearsay evidence in the record to support a reasonable inference that Martinez was "the man" who offered to sell the informant the one-half kilogram of cocaine. Thus the reference to Martinez in that regard in closing argument was not improper. This conclusion makes it unnecessary for us to discuss the second prong of the *Swiatek* test. *See Rodriguez*, 925 F.2d at 1056.

Another issue raised is whether the district court erroneously instructed the jury regarding the theory of conspiratorial liability based on *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). There was no objection at trial to the instruction given and our inquiry is limited to whether there was plain error. The district court gave the *Pinkerton* instruction suggested by the Federal Criminal Jury Instructions of the Seventh Circuit (III Fed.Crim. Jury Instructions 6 (1986)). Martinez disagrees with the use of the word "should" in the second paragraph of the instruction and argues that the instruction should have been written with some other more permissive word, such as "may" or "can." This argument is foreclosed by our decisions in *United States v. Strickland*, 935 F.2d 822, 828–829 (7th Cir. 1991) and *United States v. Troop*, 890 F.2d 1393 (7th Cir.1989).

Our final issue for consideration centers on the sentence given to Martinez. A violation of 21 U.S.C. § 841(a)(1) involving 500 or more grams of cocaine by a defendant with no prior drug convictions, where the use of the substance did not result in death or serious bodily injury, requires a statutory minimum sentence of five years. 21 U.S.C. § 841(b)(1)(B). Martinez argues on appeal that the district court misapplied the Guidelines by failing to grant him a four-level reduction for minimal participation in the conspiracy, pursuant to United States Sentencing Guidelines § 3B1.2(a). The district judge in sentencing Martinez noted that he was the "least culpable" of the three co-defendants on trial and ordered Martinez to serve the minimum sentence within the Guidelines range —63 months. Martinez did not request a reduction for minimal participation. His only request was a two-level reduction for acceptance of responsibility. If the defendant fails to request the reduction during sentencing, he has waived the issue. *United States v. Sergio*, 934 F.2d 875, 881 (7th Cir.1991); *United States v. Heilprin*, 910 F.2d 471, 474 (7th Cir.1990). We conclude that the defendant waived any opportunity to argue this issue before us.

For the foregoing reasons, the conviction and sentence of Jose Martinez are AF-FIRMED.