Hubert Julian POPE, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 14, 1993.
Decided: Oct. 20, 1993.

Anthony A. Figliola, Jr. of Figliola & Facciolo, Wilmington, for appellant.

Richard E. Fairbanks, Jr., Chief of Appeals Div., Dept. of Justice, Wilmington, for appellee.

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

HOLLAND, Justice.

The defendant-appellant, Hubert Julian Pope ("Pope"), was tried in the Superior Court. He was convicted on one count of Attempted Assault in the First Degree; two counts of Assault in the Third Degree; four counts of Possession of a Deadly Weapon During the Commission of a Felony; one count of Conspiracy in the Second Degree; and one count of Possessing of a Destructive Weapon.[1] This is Pope's direct appeal.

Pope seeks to have this Court reverse his convictions on all charges. Pope has raised two contentions in support of that position. First, he asserts that the Superior Court abused its discretion in admitting unfairly prejudicial, confusing, and unnecessarily cumulative evidence of "other crimes, wrongs or acts." Pope argues that such evidence was inadmissible according to Rules 404(b) and 403 of the Delaware Rules of Evidence ("D.R.E."). Second, Pope contends that the Superior Court erred, as a matter of law, in rejecting his request for a specific unanimity

---

1. Pope was sentenced to five years at Level V for the offense of Attempted Assault in the First Degree. He was also sentenced to five mandatory years of incarceration at Level V for each weapons charge except for the offense of Possessing a Destructive Weapon, for which Pope was sentenced to two years in prison. For Conspiracy in the Second Degree, Pope was sentenced to one year in prison at Level V, and for each of the two counts of Assault in the Third Degree, Pope was sentenced to one year of incarceration at Level V, followed by six months at Level IV.

instruction. According to Pope, such an instruction should have informed the jury that it was necessary to reach a verdict based upon its unanimous agreement regarding each defendant's role as either a principal or an accomplice for each charge.

We have carefully considered each of Pope's contentions. We have concluded that neither challenge to Pope's convictions is meritorious. Accordingly, the judgments of the Superior Court are affirmed.

### Facts

The record reflects that on the morning of March 14, 1991, four armed men committed a robbery at the Wilmington Trust Company branch at Union Street and Pennsylvania Avenue in the City of Wilmington, Delaware. The robbers were later identified as Pope, Michael Boston ("Boston"), William Francis ("Francis"), and Edward Punnette ("Punnette"). After the robbery, the four men fled in a van.

Officers Spell and Danese of the Wilmington Police Department were quickly able to locate the fleeing van and pursued it. When the officers directed the van to stop, it accelerated and a chase began. Officers Spell and Danese were fired upon through the shattered rear window of the van, but were not hit by any bullets (the "first shoot-out"). That segment of the chase ended when the van disregarded a red traffic light and struck a station wagon (the "collision"), injuring its two civilian occupants.

After the collision, the four men continued their flight on foot and further gunfire ensued (the "second shoot-out"). Two officers who had joined the pursuit, Dunning and Monahan, were each shot in the leg. Boston, Punnette, and Francis were captured at the scene of the second shoot-out, but Pope escaped.

After his arrest, Francis gave a statement to the police. He identified Boston as the driver of the van and Pope as the fourth robber. Pope was arrested the next day in Philadelphia, Pennsylvania. Pope was charged by the State with offenses relating only to the first shoot-out and the collision.[2] Pope and Boston were tried in a joint Superior Court trial.

### Uncharged Misconduct Evidence

At trial, the State sought to introduce evidence of the bank robbery and the second shoot-out. Pope objected to the State's offer of proof on the basis that it constituted inadmissible evidence of "other crimes, wrongs or acts" under D.R.E. 404(b).[3] Pope also contended that the evidence was unfairly prejudicial, confusing to the jury, and unnecessarily cumulative. *See* D.R.E. 403.[4]

The Superior Court permitted the State to introduce evidence of the uncharged misconduct involving both the bank robbery and the second shoot-out. Prior to the ruling, however, the trial judge conducted an analysis pursuant to D.R.E. 404(b) and 403, in accordance with the criteria set forth by this Court in *Getz v. State,* Del.Supr., 538 A.2d 726 (1988). The trial judge then ruled, alternatively, that the facts presented did not require a *Getz* analysis, because the evidence of the bank robbery and the second shoot-out were "inextricably intertwined with the evidence of the charged offenses." *See United States v. Mills,* 704 F.2d 1553, 1559 (11th Cir.1983).

### "Inextricably Intertwined" Doctrine

The State argues that this Court need not address any of the listed exceptions in D.R.E. 404(b), or the guidelines of *Getz,* because D.R.E. 404(b) does not apply to the evidence of either the bank robbery or the

**2.** Pope pled guilty in federal court to bank robbery charges.

**3.** D.R.E. 404(b) states:

b) **Other Crimes, Wrongs or Acts.** Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, prepara-

tion, plan, knowledge, identity or absence of mistake or accident.

**4.** D.R.E. 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.

second shoot-out. In support of its position, the States relies upon the "inextricably intertwined" doctrine. *See United States v. Foster,* 889 F.2d 1049 (11th Cir.1989). In *Foster,* the Eleventh Circuit held that evidence is "inextricably intertwined" with the charged offenses and, therefore, does not implicate the constraints of Rule 404(b) of the Federal Rules of Evidence ("F.R.E.")[5], if it forms an "integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Id.* at 1053 (quoting *United States v. Costa,* 691 F.2d 1358, 1361 (11th Cir.1982)). The Eleventh Circuit held that such evidence "is admissible even if it tends to reflect negatively on the defendant's character." *Id.* However, the decisions of various federal circuit courts which have recognized the "inextricably intertwined" doctrine are not uniform in their formulation or application of its precepts. *See, e.g., United States v. Allen,* 960 F.2d 1055, 1058 (D.C.Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992); *United States v. Hill,* 953 F.2d 452, 456–58 (9th Cir.1991); *United States v. Roberts,* 933 F.2d 517, 519 (7th Cir.1991); *United States v. Mays,* 822 F.2d 793, 797 (8th Cir.1987); *United States v. Mills,* 704 F.2d at 1559; *United States v. Masters,* 622 F.2d 83, 86–87 (4th Cir.1980).

 The policy underlying D.R.E. 404(b), as recognized by this Court in *Getz,*

mandates that evidence of uncharged misconduct be analyzed *first, vis-a-vis* the listed exceptions, even though the rule is "inclusionary" (i.e., the list of exceptions is not exhaustive of potentially admissible evidence). *See Getz v. State,* 538 A.2d at 730–31. It is *only* if the evidence of uncharged misconduct offered by the State is not admissible pursuant to any of the exceptions set forth in D.R.E. 404(b), or for any other consistent purpose,[6] that a trial judge may consider the admissibility of such evidence pursuant to the carefully circumscribed "inextricably intertwined" doctrine.[7] That doctrine's applicability is limited to "inextricably intertwined" evidence of uncharged misconduct which, if excluded, would create a "chronological and conceptual void" in the State's presentation of its case to the jury that would likely result in significant confusion.[8] *See United States v. Adamo,* 882 F.2d 1218, 1229, 1234 (7th Cir.1989). *Compare United States v. Swiatek,* 819 F.2d 721, 727–28 (7th Cir. 1987).

 A trial judge may only admit evidence of "inextricably intertwined" misconduct for the purposes of avoiding the confusion which would be caused by its exclusion, and then only after balancing the prejudicial effect of its inclusion. D.R.E. 403; *United States v. Mills,* 704 F.2d at 1559.[9] If the

---

**5.** The language of F.R.E. 404(b) is substantially identical to that of D.R.E. 404(b). *See* F.R.E. 404(b); D.R.E. 404(b).

**6.** *See Getz v. State,* 538 A.2d at 734.

**7.** *Accord Ashley v. State,* Del.Supr., 633 A.2d 368, Walsh, J. (1993) (ORDER).

**8.** The introduction of evidence of uncharged misconduct that is "inextricably intertwined" with charged offenses "should be applied narrowly to avoid the overly-broad, so-called 'res gestae' exception." *United States v. Hill,* 953 F.2d at 457 n. 1. *See generally* Imwinkelreid, *Uncharged Misconduct Evidence* §§ 6:21–6:25 (1984 & 1993 Cum.Supp.); 1A Wigmore, *Evidence* § 218 (Tillers rev. 1983 & Reiser, 1993 Supp.). *See also Mayes v. State,* Tex.Crim.App., 816 S.W.2d 79, 86–88 (1991) (discussing the hazards of removing "background" from the analytical framework of the "other crimes, wrongs or acts" rule). Concerning the sweeping *"res gestae"* doctrine, Professor Wigmore's treatise states:

[T]his phrase is unsatisfactory, first because it is obscure and indefinite and needs further definition and translation before either its reason or its scope can be understood, secondly because its very looseness and obscurity lend too many opportunities for its abuse, and thirdly because it has common application to other rules of evidence.... It is occasionally used to admit acts whose real function is to show intent or motive or design. But when we ignore the correct purposes of admission and substitute an indefinite and meaningless phrase of this sort, the result is only to make rulings on evidence arbitrary and chaotic.

1A Wigmore, *Evidence* § 218, at 1888 (Tillers rev.1983) (citation omitted).

**9.** *See Ashley v. State,* Del.Supr., 633 A.2d 368, Walsh, J. (1993) (ORDER). *See also* Imwinkelreid, *Uncharged Misconduct Evidence* § 6:24, at 208 (1993 Cum.Supp.); *United States v. Swiatek,* 819 F.2d at 727 (evidence concerning defendant's advice about how to deal with stolen cars not "inextricably intertwined" with illegal gun transactions, even though occurred on the same day).

trial judge concludes that it is impractical to present the State's case on the charged crime without evidence of the uncharged "inextricably intertwined" act of misconduct, the jury should be instructed as to the limited purpose for which such evidence is admitted, and that the evidence of the uncharged "inextricably intertwined" misconduct should not be considered by it for any substantive purpose or as indicative of the defendant's character. *See Getz v. State*, 538 A.2d at 734; *Weber v. State*, Del.Supr., 547 A.2d 948, 956 (1988). *Accord United States v. Lehder–Rivas*, 955 F.2d 1510, 1516 (11th Cir.), *cert. denied sub nom. Reed v. United States*, — U.S. —, 113 S.Ct. 347, 121 L.Ed.2d 262 (1992); *United States v. Mays*, 822 F.2d at 797. *See also* Imwinkelreid, *Uncharged Misconduct Evidence* § 6:24, at 40 (1984); 2 Wigmore, *Evidence* § 365, at 287 (3d ed. 1940) (merely "inseparable" acts do not serve "any evidential purpose").

In this case, the Superior Court properly began its analysis of the State's proposal to present evidence of uncharged misconduct *vis-a-vis* the exceptions in D.R.E. 404(b). Because the Superior Court ruled that the State's evidence was admissible in accordance with D.R.E. 404(b), it was not necessary for the Superior Court, and it is unnecessary for this Court, to decide whether the evidence of the bank robbery and the second shoot-out were admissible pursuant to the "inextricably intertwined" doctrine. Accordingly, we will only review the 404(b) basis for the Superior Court's admission of the evidence of both the bank robbery and the second shoot-out, in accordance with this Court's holding in *Getz* and its progeny.

### *Getz and 404(b)*

### *Uncharged Misconduct*

■ The first two criteria in the *Getz* analysis are closely related: (1) the evidence must be "material to an issue or ultimate fact in dispute in the case," and (2) it must be "introduced for a purpose sanctioned by Rule 404(b), or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition." *Getz v. State*, 538 A.2d at 734. The record reflects that both elements have been satisfied in the

case *sub judice* with respect to the uncharged misconduct evidence offered by the State.

■ The occurrence of the bank robbery was admissible because it provided a motive for the first shoot-out. *See Zimmerman v. State*, Del.Supr., 565 A.2d 887, 890 (1989). In addition, it was probative of the identity of the occupants of the van at the time of that shoot-out. *See Hanna v. State*, Del.Supr., 591 A.2d 158, 165 (1991); *Dawson v. State*, Del.Supr., 581 A.2d 1078, 1097 (1990), *vacated on other grounds*, — U.S. —, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992); *Dutton v. State*, Del.Supr., 452 A.2d 127, 145 (1982). The evidence of the second shoot-out was material to the elements of intent and identity for the charge of Attempted Assault in the First Degree. *See Lovett v. State*, Del.Supr., 516 A.2d 455, 468–69 (1986); *Thomas v. State*, Del.Supr., 467 A.2d 954, 958 (1983); *Tice v. State*, Del.Supr., 382 A.2d 231, 233 (1977). That evidence was admissible because a rational factfinder could logically infer from Pope's violent flight his consciousness of guilt concerning the first shoot-out. *See Tice v. State*, 382 A.2d at 233.

In accordance with the third and fourth *Getz* criteria, the Superior Court determined that the uncharged misconduct was established by evidence which was "plain, clear, and conclusive," and that the other acts were not too remote in time from the charged offense. *Getz v. State*, 538 A.2d at 734 (quoting *Renzi v. State*, Del.Supr., 320 A.2d 711, 712 (1974)). The record reflects that Pope pled guilty to the bank robbery charges in federal court, and that incident occurred immediately prior to the first shoot-out. With respect to the second shoot-out, the testimony of various eyewitness accounts and Pope's flight from the scene provided "conclusive" evidence of that uncharged misconduct. *See Diaz v. State*, Del.Supr., 508 A.2d 861, 865 (1986). The second shoot-out also occurred immediately subsequent to the first shoot-out. Therefore, the record supports the Superior Court's ruling that the third and fourth criteria established in *Getz* had been satisfied.

The Superior Court correctly recognized that, regardless of the applicability of the D.R.E. 404(b) "other crimes, wrongs or acts" exceptions, the fifth criterion in *Getz* required it to determine that the probative value of the evidence presented was not substantially outweighed by the danger of unfair prejudice, the potential for confusing or misleading the jury, or needless cumulative effect. D.R.E. 403. *Getz v. State*, 538 A.2d at 730, 734; *Howard v. State*, Del.Supr., 549 A.2d 692, 693 (1988). The potential for prejudice from evidence that Pope participated in an armed robbery and shoot-out with the police is undeniable.

However, that uncharged misconduct was relevant to establishing Pope's motive, intent, and identity with respect to the charged offenses. It was also significant to the jury's understanding of the immediate context of events surrounding the offenses for which Pope was charged. Therefore, the record supports the Superior Court's finding that the prejudice to Pope did not substantially outweigh the probative value of the State's evidence. *See Howard v. State*, 549 A.2d at 694 (prior purchase and use of illegal drugs by defendant was material to the plan and motive of the charged conspiracy, and was "necessary to the jury's understanding of the State's case").

Finally, as required by the sixth criterion in *Getz*, the Superior Court properly instructed the jury as to the limited purposes for which this evidence of uncharged misconduct was to be considered. *Getz v. State*, 538 A.2d at 734. *See also Weber v. State*, 547 A.2d at 956. The Superior Court judge instructed the jury concerning its use of the evidence relating to the bank robbery and the second shoot-out, as follows:

> You may not use [the bank robbery] evidence as proof that the defendants are bad persons and therefore probably committed the offenses contained in the indictment. You may use that evidence only to help you in deciding whether the defendants were the persons who committed the offenses contained in the indictment.

> The State claims that the prior act might tend to show a motive or intent to commit the offenses contained in the indictment, or the identity of the defendants as those who committed the offenses contained in the indictment.

> You may consider the prior act evidence to help you decide if such evidence tends to identify the defendants as the ones who committed the offenses contained in the indictment or tends to show a motive or an intent for the defendants to commit the offenses contained in the indictment. You may not use the prior act evidence for any other purpose whatsoever.

> So, too, with the evidence of the apprehension or attempted apprehension of the defendants following the alleged commission of the offenses contained in the indictment. The State claims that the circumstances surrounding the apprehension of Mr. Boston and the attempted apprehension of Mr. Pope at the Amato–Stella building might tend to show the intent of the defendants to commit the offenses contained in the indictment. You may consider this evidence to help you decide if such evidence tends to show the intent of the defendants at the time of the alleged commission of the acts contained in the indictment and you may not use this evidence for any other purpose whatsoever.

> In this case, the State contends that the defendants evaded arrest following the commission of the crimes contained in the indictment. Evidence of evasion of arrest is admissible in a criminal case as a circumstance tending to disclose consciousness of guilt.

> Further, the State contends that the defendant, Hubert Julian Pope, fled, following the commission of the crimes contained in the indictment. Likewise, evidence of flight of a person immediately after the commission of a crime is admissible in a criminal case as a circumstance tending to disclose consciousness of guilt. Such facts, if proved, may be considered by you in light of all other facts proved. Whether or not such evidence shows a consciousness of guilt and the significance to be attached to such a circumstance are matters for your determination.

■ A trial court's admission of evidence pursuant to D.R.E. 403 and 404(b) will not be

set aside by this Court unless the trial court has abused its discretion. *Howard v. State,* 549 A.2d at 693; *Weber v. State,* 547 A.2d at 955. *See Williams v. State,* Del.Supr., 494 A.2d 1237, 1241 (1985). In the case *sub judice,* the Superior Court carefully applied D.R.E. 404(b) and 403 to the facts, in accordance with the criteria established in *Getz.* This Court finds no abuse of discretion by the Superior Court in admitting the State's evidence of uncharged misconduct in its case against Pope.

### Unanimity Instruction

Pope asserts that he was entitled, as a matter of law, to a specific unanimity instruction on the issue of each defendant's role as a principal or an accomplice. Therefore, Pope contends that the Superior Court erred by instructing the jury that its "verdict need not be unanimous as to a specific theory of liability as a principal or as an accomplice so long as you are all in general agreement as to guilt."

This Court has held that a specific unanimity instruction is required in order to distinguish principal and accomplice liability only when the State relies upon two separate incidents, either of which could support a defendant's conviction for a particular charge. *Probst v. State,* Del.Supr., 547 A.2d 114, 123 (1988). In particular, this Court has stated:

> The need for a specific unanimity instruction flows from the fact that the basis for liability stems from two separate incidents and *not* from the applicability of principal or accomplice liability with respect to one of the two incidents.

*Id.* at 122. *See also Scarborough v. United States,* 522 A.2d 869, 873 (D.C.1987); *Owens v. United States,* 497 A.2d 1086, 1093 (D.C. 1985), *cert. denied,* 474 U.S. 1085, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986). Accordingly, in *Probst,* this Court stated that "[t]here is no requirement . . . that the jury be unanimous in its view as to which of the parties was the principal and which was the accomplice." *Probst v. State,* 547 A.2d at 123.

■ In the case *sub judice,* the first shoot-out constituted a single incident underlying the charge of Attempted Assault in the First Degree and the weapons charges. The collision formed the single incident basis for the Assault in the Third Degree charges. The State sought convictions on the charges against Pope and Boston on both principal and accomplice theories. The "particular set of facts" as to which the jury was required to agree unanimously was the *incident* or *act* to which the State attributed criminal liability, and not the role of the actors as principal or accomplice.

"[A] specific unanimity instruction is not required where a single defendant may be convicted as either a principal or an accomplice." *Zimmerman v. State,* Del.Supr., 565 A.2d 887, 891 (1989) (citing *Probst v. State,* 547 A.2d at 122). "In a criminal charge involving one incident and two people, the jury is regarded as being unanimous if, without specifically identifying who was the principal and who was the accomplice, they all agree that one of the two actors performed all of the elements of the offense charged as a principal and that *both actors knowingly participated in the alleged criminal act.*" *Probst v. State,* 547 A.2d at 123 (emphasis added). Because separate incidents formed the basis for *separate charged offenses* against Pope, the factual predicate which required an instruction to the jury upon specific unanimity in *Probst* was absent from the State's case against Pope. *See also Liu v. State,* Del.Supr., 628 A.2d 1376, 1385–87 (1993). Under the circumstances of Pope's case, the Superior Court's general unanimity instruction to the jury, on the issue of principal and accomplice liability, was proper.

### Conclusion

The judgments of the Superior Court are **AFFIRMED.**