Elmer Eugene TICE, Jr., Defendant below, Appellant,

v.

STATE of Delaware, Plaintiff below, Appellee.

Supreme Court of Delaware.

Submitted Sept. 14, 1977.

Decided Dec. 16, 1977.

Thomas G. Hughes, of O'Donnell & Hughes, P. A., Wilmington, for defendant below, appellant.

Milton P. Shafran, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

The defendant appeals from a conviction of assault with intent to murder.[1] He admits shooting the victim but claims that he acted in self defense. He contends that the Trial Court erred in the following respects:

---

1. Defendant was charged under 11 *Del.C.* § 577 (repealed July 1, 1973) which provided:

> "§ 577. Assault with intent to murder
> "Whoever, with violence, assaults another with intent to commit murder is guilty of a felony, and shall be fined not less than $500 nor more than $1,000, and imprisoned not more than 20 years."

The incident occurred in 1970. The defendant was originally tried by jury in 1974, and was found guilty and sentenced. He thereupon sought post-conviction remedies which ultimately resulted in a writ of habeas corpus issued by the U.S. District Court for Delaware. The District Court determined in 1976 that defendant was entitled either to reinstatement of his previous appeal to this Court or to a new trial within 120 days. This Court determined that it did not have jurisdiction to reinstate the defendant's previous appeal; a new trial, resulting in this appeal, was subsequently held within the 120 day period.

in instructing the jury on flight after the crime; in not instructing on both the pre- and post-1973 Criminal Code provisions on self defense; in excluding evidence of a previous assault conviction of the victim; and in denying a motion for acquittal. Finding no reversible error, we affirm.

The incident occurred five days after the victim had married the defendant's former wife. The defendant waited for the victim to return to his home near New Castle, and there confronted him. An argument ensued during which the defendant shot the victim in the chest; the defendant claimed that the victim attacked him first with a sledge hammer. After the shooting, the defendant drove to Leipsic, Delaware, where he resided for 3½ years, using different aliases, until apprehended.

## I.

The defendant contends that, although evidence of flight is generally admissible to show a consciousness of guilt, it was error to elevate the evidence to a jury instruction[2] under the present circumstances because the standard, governing such instructions, is whether the flight tends to establish guilt or innocence, *Farrar v. State*, Okl. Cr., 505 P.2d 1355 (1977). It is argued that, since the defendant admits the shooting, since he was on parole and did not wish to be re-incarcerated, and since the real issue was the identity of the aggressor, the instructions were improper because not addressed to the guilt or innocence of the defendant.

The motive of a defendant in fleeing is a question for the jury, 1 *Wharton's Criminal Evidence* § 214; and where, as here, there is a question as to whether defendant departed the scene because of a consciousness of guilt and a desire to avoid an accusation based thereon, or for some other reason, an instruction on flight is appropriate. *State v. Canery*, N.J.Supr., 144 N.J.Super. 527, 366 A.2d 706 (1976). Cf. *Johnson v. State*, Del.Supr., 312 A.2d 630 (1973). We find no error in the charge on flight.

## II.

The Trial Court did not err in declining to give instructions on both the pre-1973 Code[3] and post-1973 Code[4] law of self-defense. Because the offense occurred in 1970 and the trial was held in 1977, the defendant requested instructions based on both the pre-1973 and post-1973 law. The Trial Court refused to give both instructions and ruled that the defendant could choose one, as permitted by 11 *Del.C.* § 102(b)(2).[5] The defendant thereupon chose an instruction based upon the post-1973 law.

The Trial Court ruled correctly. In enacting 11 *Del.C.* § 102(b)(2), the Legislature did not intend that a defendant have the

---

**2.** The instruction on flight given to the jury over defendant's objection was:

"In this case the State contends that the defendant fled following the commission of the offense and concealed himself for a period of time, falsifying his true identity. Evidence of flight and concealment of person after the commission of crime or evidence of evasion of arrest are admissible in criminal cases as circumstances tending to disclose a consciousness of guilt. Such fact, if proved, may be considered by you in the light of all the other facts proved, including any explanation by the defendant as to the reasons of such action. Whether or not such evidence shows a consciousness of guilt and the significance to be attached to such a circumstance are matters for your determination."

**3.** Under pre-1973 law, self-defense was an affirmative defense requiring proof by a prepon-

derance of the evidence of the existence of acts giving rise to the defense. See *Quillen v. State*, Del.Supr., 110 A.2d 445 (1953).

**4.** 11 *Del.C.* § 464 in substance provides for a subjective standard and requires the state to negate any reasonable doubt on the issue of justification; but this Statute may not be used where the defendant provoked the incident or can avoid the necessity of using deadly force.

**5.** 11 *Del.C.* § 102(b)(2) reads:

"(b) In any case pending on or commenced after July 1, 1973, involving an offense committed prior to that date:

\* \* \* \* \* \*

"(2) Provisions of this Criminal Code according a defense or mitigation shall apply with the consent of the defendant."

benefit of both laws; it intended only that the defendant have the option to choose one. See *Coleman v. State*, Del.Supr., 320 A.2d 740, fn. 1 at 741 (1974); *Hamilton v. State*, Del.Supr., 343 A.2d 594, fn. 1 at 594 (1975).

## III.

The defendant contends that the Trial Court erred in not granting his motion for acquittal in that the evidence was insufficient to convict him of assault with intent to commit murder. According to the defendant, the prosecution's evidence was so ambiguous and in such close balance that "the presumption of innocence swung the scales in favor of the defendant".

■ There was no error in failing to grant the motion for acquittal. In passing upon such motion, the evidence, together with the legitimate inferences therefrom, must be considered from the point of view most favorable to the State. *State v. Biter*, Del.Super., 119 A.2d 894 (1955).

■ The following evidence was more than ample to withstand the motion: that the defendant previously had harassed and threatened the victim; that on the day of the shooting the defendant waited for the victim with two loaded guns and shot him in the chest; that the victim testified that he did not provoke the shooting; and that defendant fled the scene and used an alias for 3½ years until he was caught. As the Trial Court stated, "shooting another person, particularly in the chest area, with a deadly weapon is sufficient to create a *prima facie* case of assault with intent to murder".

6. The testimony in issue was:
By Mr. Hughes:
"Q I am referring to * * * the * * * question * * * , 'What did you do to him?'
" 'Whatever you want to call hurt, you know, physically I never hurt anybody.'
"Do you remember that statement?
"A Right.
"Q That is still correct today, you never hurt anybody?

## IV.

■ Finally, the defendant asserts that the Trial Court erred in not permitting cross-examination of the victim, during the State's case, about a previous conviction for assault upon his wife.[6] Truthful answers to this line of questioning, it is contended, would have contradicted the victim's previous statements that he had never hurt anybody, would have shown who the aggressor was, and would have shown the defendant's frame of mind.

In not permitting this line of questioning, the Trial Court ruled that evidence pertaining to the defendant's frame of mind, while perhaps relevant and admissible at a later stage of the trial, was not relevant at that stage. The Trial Court also determined that there was no potential impeachment by prior inconsistent statement; that the victim did not actually testify that he had never hurt anybody, but was maneuvered into saying those words; and that there was no actual contradiction.

We find no reversible error in these rulings of the Trial Court.

■ We also find that there was no reversible error in the Trial Court's rejection of the testimony in question as evidence tending to identify the aggressor. While evidence of previous acts of the victim may be admitted when that evidence goes to an essential element of the charge of assault or murder or the defense of justification, see, e. g. *Federal Rules of Evidence* 405(b), Anno. 1 A.L.R.3d 571 § 8 (1965), under the circumstances of this case the error, if any, was harmless beyond a reasonable doubt. Not only could the testimony have been introduced later for that purpose, but, since there was testimony of four other witnesses as to the general reputation of the victim

"A Right.
"Q Mr. Weatherlow, have you ever been involved in a Family Court action with your wives?
"A Oh, yes.
"Q That doesn't count as hurting anybody?
"MR. SHAFRAN: Objection, your Honor.
. . . ."

for violence and of prior threats by the victim, the defendant has not demonstrated the prejudice requisite for reversible error; i. e., that, if admitted, the evidence would probably have affected the result of the trial. *Towle v. Aube*, Me.Supr., 310 A.2d 259 (1973).

Affirmed.