**Dwaynne STAATS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 501, 2005.**

Supreme Court of Delaware.

Submitted: May 17, 2006.

Decided: June 29, 2006.

**13.** D.R.E. 901(b)(2) and (4).

Nicole M. Walker, Esquire, Office of the Public Defender, Wilmington, Delaware, for appellant.

Elizabeth R. McFarlan, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before HOLLAND, BERGER and · JACOBS, Justices.

HOLLAND, Justice.

The defendant-appellant, Dwayne Staats, was charged with Murder in the First Degree and Possession of a Firearm During the Commission of a Felony. Following a six-day jury trial, Staats was convicted as charged. Staats was sentenced to life in prison without the possibility of probation or parole for the murder, and to ten years in prison for the weapons offense.

Staats has raised one issue in this direct appeal. Staats argues that the trial judge abused his discretion in finding sufficient evidence to warrant a flight instruction, which permitted the jury to infer "consciousness of guilt" from Staats' "mere departure" from the crime scene.

We have concluded that the trial judge did not abuse his discretion by giving a flight instruction, because there was sufficient evidence from which a jury could find that Staats fled from the crime scene and attempted to avoid apprehension by altering his appearance. Therefore, the judgments of the Superior Court must be affirmed.

### Facts

On April 16, 2004, Julian Ray rented a car for the day and drove around New Castle County. Sometime after 2:00 p.m.,

Ray saw Staats at 4th and Madison Streets in Wilmington. Ray had known Staats for at least ten years. Staats, who was wearing jeans, a sweatshirt hoodie and a red baseball cap, approached the car and asked to be taken to 7th Street. Ray dropped Staats off at 7th and Washington Streets before turning right onto Washington Street.

Another acquaintance, Kia, and her mother, Sarah Wright, saw Staats as their car was turning right onto Washington Street from 7th Street. Kia and Wright said "Hi" to Staats, who replied briefly. Wright testified that Staats was wearing a hoodie and a red baseball cap.

Diavonna Moulden, who was living at 7th and Washington Streets, was outside when she saw Hakim Crawford come up from 7th Street across the parking lot with a man wearing a grey hoodie and a red baseball cap. A few minutes later, Moulden heard a gunshot. She turned and saw the man in the red cap shoot Crawford three times, and stand over Crawford for the final shot.

After shooting Crawford, the man in the red cap ran down Washington Street and turned left on 6th Street. Almost immediately after Wright heard the gunshots, she saw Staats running down Washington Street, appearing to be putting a black gun into his pocket. Ismael Torres, Shane Farley and Nicholas Maidanso also saw a man in a red baseball cap running down Washington Street and turning left onto 6th Street immediately following the shooting. Torres saw the man in the red cap with a black gun as he ran.

Farley saw a cell phone on the ground where the man in the red cap had turned the corner onto 6th Street. Farley turned the phone over to the police. The cell phone was billed to Steven Williams, Staats' uncle, at the address where the mother of Staats' child lived.

Wright saw Staats again, as she and her daughter turned onto 4th Street. Wright watched as Staats got into Ray's car, noticing that Staats was no longer wearing the red baseball cap. The police discovered a red baseball cap in the courtyard of the Friends' Meeting House at 4th and West Streets. Subsequent testing determined that Staats was a potential contributor to the DNA mixture that had been analyzed from the inside of the red baseball cap.[1]

Ray had been driving down Washington Street heading toward 4th Street when he saw Staats running across the street at the intersection of 4th and Washington Streets. Ray turned onto 4th Street, and when he came to the light at 4th and West Streets, he beeped his horn. Staats turned, saw who was there, and got into Ray's car. Ray testified that Staats was tired and out of breath.

Staats asked to be taken to Wellington Woods in Bear, Delaware, explaining that he had "just shot that nigger" because "he tried to play me." Staats also told Ray that Crawford owed him $120. Ray told Staats that he could not take him all the way to Bear. Ray took Staats to 8th and Walnut Streets, from where Staats could catch a bus. Before Staats got out of the car, Ray gave him a sweat jacket as Staats requested.

Staats did not testify at trial. His defense centered on challenging the credibility of the State's witnesses and attempting to demonstrate that he was not the shooter. Staats requested and received instructions on the lesser-included offenses of Manslaughter and Murder in the Second Degree. The jury found Staats guilty as

1. The State's evidence at trial indicated that the chance of an unrelated individual's DNA randomly being included in that mixture was approximately one in 200 in the African American population.

charged of Murder in the First Degree and the weapons offense.

### Flight Instruction Decision

At the initial prayer conference, the State asked for a flight instruction based on evidence it had presented at trial that Staats fled the scene after committing the crime. Defense counsel argued that such an instruction required evidence that Staats was aware that he was wanted before the flight. Defense counsel also asserted that there must be a temporal gap between the commission of the crime and the act of flight. The prayer conference adjourned without a ruling.

The next morning, defense counsel acknowledged that a recent case appeared to support the contention that simply leaving the scene may be sufficient to support a flight instruction.[2] After that concession, the trial judge ruled that, based on the facts of Staats' case, he would give the flight instruction. After closing argument, the trial judge instructed the jury as follows:

> In this case the State contends that the defendant evaded arrest and took flight following the commission of the offenses contained in the indictment.
>
> Evidence of evasion of arrest and flight is admissible in a criminal case as a circumstance regarding identity and consciousness of guilt.
>
> You may use this evidence for this purpose only. You may not consider this evidence as proof that the defendant is a bad person and therefore probably committed the offenses contained in the indictment.
>
> You may use this evidence only to help you in deciding whether the defendant was the person who committed the offenses contained in the indictment.
>
> The evidence of evasion of arrest or flight if proved may be considered by you in light of all the facts proved. Whether or not such evidence shows identity or consciousness of guilt and the significance to be attached to such evidence are matters solely for your determination.

### Staats' Argument

In this appeal, Staats argues that there was insufficient evidence to support a flight instruction. Staats asserts that "[a]bsolutely no evidence was presented to the jury that Staats evaded arrest, fled from apprehension, concealed himself or in anyway [sic] attempted to avoid prosecution." Staats contends that the flight instruction was improperly based solely on evidence that Staats was in the area at the time of the shooting. Staats' contentions are not supported by the record.

### Standard of Review

 This Court reviews a claim of insufficient evidence to support a requested jury instruction for abuse of discretion.[3] There must be some basis in the evidence presented at trial to warrant a flight instruction.[4] "A flight instruction is proper where there is evidence of flight or concealment *and* the evidence reasonably supports an inference that defendant fled because 'of a consciousness of guilt and a desire to avoid an accusation based thereon, or for some other reason....' "[5] The

---

**2.** See *Daniels v. State,* 703 A.2d 643, 1997 WL 776202, at *3 (Del.Supr.); *Colon v. State,* 651 A.2d 787, 1994 WL 605540, at *2 (Del.Supr.).

**3.** See *McNally v. Eckman,* 466 A.2d 363, 370 (Del.1983).

**4.** See *Fuller v. State,* 860 A.2d 324, 331 (Del. 2004); *Thomas v. State,* 467 A.2d 954, 958 (Del.1983).

**5.** *Thomas v. State,* 467 A.2d at 958 (quoting *Tice v. State,* 382 A.2d 231, 233 (Del.1977)) (other citations omitted).

fact that Staats fled, if proven, may be considered by the jury as evidence of consciousness of guilt, which in turn may be considered as probative of the identity of the perpetrator.[6]

### Evidence Supports Flight Instruction

■ In this case, there was sufficient evidence to support a flight instruction. Ray testified that he had dropped Staats off a block away from where the murder took place, moments before it occurred. Staats was wearing a red baseball cap at the time. Ray's testimony was consistent with Wright's testimony that, when she said hello to Staats, he was wearing a red baseball cap.

Four witnesses saw a man wearing a red baseball cap running away from where Crawford was shot, immediately after they heard the gunshots. Of those four witnesses, one saw the man shoot Crawford, another saw the man with a gun, and a third witness retrieved the cell phone dropped by the man in the red baseball cap. That cell phone was later linked to Staats through the phone log.

Wright and Ray both saw Staats running shortly after the murder, and Wright saw Staats with a gun. A few moments later, Wright saw Staats, who was no longer wearing the red baseball cap, get into Ray's car. Ray testified that Staats asked to be taken out of town and also asked for Ray's sweat jacket. Based on this circumstantial evidence, the jury could infer that Staats shot Crawford, fled, and discarded his red baseball cap and changed his hoodie to avoid being identified as the shooter.

Contrary to Staats' argument, the record shows Staats was not simply "in the area" and did not simply "depart from the scene of the crime." Staats was seen running away from the scene, in such a hurry that he did not stop to pick up the cell phone he dropped. Staats removed his distinctive red baseball cap, leaving it in a courtyard as he ran; and accepted a ride from his friend, asking to be taken to Bear, another town more than ten miles away. Staats tried to disguise himself by borrowing Ray's sweat jacket.

■ The State submits that it need not prove that the defendant was aware that he stood accused of committing the crime unless flight is the *sole* evidence of identity.[7] We agree. In this case, there was evidence other than flight to identify Staats, i.e., the cell phone, the red baseball cap and Staats' statement to Ray that he had just shot someone.[8]

All of Staats' actions indicate that he was trying to distance himself from the crime scene as quickly as possible. The record reflects a classic instance of flight and concealment.[9] Accordingly, we hold that the flight instruction was entirely appropriate in Staats' case.

6. *See Pope v. State,* 632 A.2d 73, 77 (Del. 1993); *Tice v. State,* 382 A.2d at 233.

7. *See United States v. Harris,* 792 F.2d 866, 869 (9th Cir.1986); *see also United States v. Miles,* 468 F.2d 482, 489–90 (3d Cir.1972).

8. *See, e.g., McMillan v. Gomez,* 19 F.3d 465, 469 (9th Cir.1994) (finding no error in flight instruction given when identity of person fleeing was not established but there was a strong showing that it must have been the defendant who left the scene after leaving his fingerprints on the cold beer can).

9. 2 K. Braun, *McCormick on Evidence,* § 263, at 217 (6th ed.2006). 2 J. Wigmore, *Evidence,* § 276, at 111 (3d ed.1940). *See also State v. Fisher,* 336 N.C. 684, 445 S.E.2d 866, 878 (1994) (evidence sufficient for flight instruction where defendant fired gun, ran from scene, discarded a distinctive identifying jacket he was wearing and disappeared among the houses).