IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JORDAN O. HARRIS, | § | |
| | § | No. 415, 2017 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1607020376 (K) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: February 8, 2019
Decided: April 16, 2019

Before **STRINE,** Chief Justice; **VAUGHN** and **SEITZ**, Justices.

## **ORDER**

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The defendant below-appellant, Jordan O. Harris, filed this appeal from his convictions for Possession of a Firearm by a Person Prohibited ("PFBPP"), Possession of Firearm Ammunition by a Person Prohibited ("PABPP"), and other crimes. After careful consideration of the parties' arguments, we affirm the Superior Court's judgment.

(2)    The evidence presented at trial showed that, on the night of July 26, 2016, several members of the Delaware State Police Governor's Task Force went to the reported residence of a probationer (not Harris) in Milford with outstanding

capiases. As the police approached, a 1988 Dodge Aries with two people inside pulled up to the residence. Harris was the driver. A police officer, who was wearing a tactical vest identifying her as a State trooper, and a probation officer approached the car and shone a flashlight inside to determine if one of the occupants was the probationer. The passenger looked back and then the car pulled way. The police officer switched the flashlight to strobe, but the car continued to drive away. The police officers, who were in three vehicles, activated their lights and sirens and followed the car.

(3) As the police followed, the car sped up, ran a stop sign, failed to signal as it turned onto Church Street, and veered from side to side. Detective Christopher Donaldson, who had a police dog with him, saw Harris was reaching into the back seat with his right hand and rummaging around. Detective Donaldson suspected that Harris might be preparing to throw something out of the car. The car turned left, without signaling, onto a gravel road between two cornfields. After Detective Donaldson hit the car, it came to a stop.

(4) Detective Donaldson and another officer approached the car with their guns raised and demanded that the occupants raise their hands. Both occupants initially raised their hands, but then Harris put his hands down and refused to raise them after being ordered to do so. Unable to see Harris' hands and fearing that he had a weapon, Detective Donaldson directed the police dog to apprehend Harris by

2

biting him. Harris held onto the steering wheel and still refused to exit the car. Detective Donaldson pulled him out of the car, but Harris still refused to show his hands. Once Detective Donaldson could see both of Harris' hands and had subdued him, he ordered the police dog to release Harris.

(5) After Detective Donaldson read Harris his *Miranda* rights, he was taken to the hospital for treatment of his dog bite wounds. The police officer who accompanied Harris to the hospital noticed that Harris was swaying at the scene, smelled of alcohol, and had glassy, bloodshot eyes. Harris could not recite the alphabet correctly and would not count backwards. The police officer obtained a search warrant for a blood sample. Harris' blood alcohol level was .06 and his blood tested positive for marijuana.

(6) The police searched the path of the car chase and found a loaded .40 caliber black handgun. The police were unable to recover any fingerprints from the gun, but they did collect DNA. The swab from the handgun trigger contained DNA that was consistent with Harris' DNA. Harris was charged with PFBPP, PABPP, Tampering with Physical Evidence, Conspiracy in the Second Degree, Resisting Arrest, Driving a Vehicle While Under the Influence of Drugs, Driving Without a License, Fictitious of Cancelled Registration, Operation of an Unregistered Motor Vehicle, Failure to Stop at a Stop Sign, Stopping or Suddenly Decreasing Speed

3

Without Giving a Proper Signal, Inattentive Driving, and two counts of No Turn Signal.

(7)     Before jury deliberations, the State dismissed the Conspiracy in the Second Degree, No Valid License, and Operation of an Unregistered Motor Vehicle charges.    The jury found Harris guilty of all the remaining charges, except Tampering with Physical Evidence, Fictitious or Cancelled Registration, and Stopping or Suddenly Decreasing Speed Without Giving a Proper Signal.    The Superior Court sentenced Harris to 25 years of Level V incarceration, suspended after 7 years for decreasing levels of supervision.    This appeal followed.    On appeal, Harris exercised his right to represent himself.

(8)     Harris argues that: (i) the flight, constructive possession, and unanimous verdict jury instructions as well as the stipulation that he was a person prohibited were confusing, speculative, and prejudicial; (ii) the Superior Court erred by failing to hold a hearing on a juror's admission that he ignored the admonition not to talk to anyone about the case during the trial; (iii) the Superior Court erred by allowing the admission of the wrong gun into evidence; (iv) the State concealed and tampered with evidence in violation of *Brady v. Maryland*;[1] (v) he was deprived of materials that he needed for this appeal; and (vi) the Superior Court ignored his pro

---

[1] 373 U.S. 83 (1963).

se filings, including a request to represent himself, and denied his request for additional time to prepare for trial.

(9)     We review a trial judge's decision to give a jury instruction over the defendant's objection *de novo*.[2]  Jury instructions must correctly state the substance of the law and must be reasonably informative and not misleading.[3]  At trial, Harris objected to a flight instruction as highly prejudicial and inappropriate because there was no evidence Harris had committed any crimes at the time the police first saw the Dodge Aries.  The Superior Court found there was sufficient evidence to support a flight instruction.

(10)    This Court has held that a flight instruction is proper when "where there is evidence of flight or concealment and the evidence reasonably supports an inference that defendant fled because 'of a consciousness of guilt and a desire to avoid an accusation based thereon, or for some other reason....'"[4]  There was sufficient evidence to support a flight instruction here, including Harris' status as a person prohibited, testimony that he drove away when the police approached him and was rummaging in the back seat as the police followed him, and the discovery of a gun with his DNA along the path of the car chase.  The flight instruction was a

---

[2] *Robertson v State*, 41 A.3d 406, 408 (Del. 2012).
[3] *Lloyd v. State*, 152 A.3d 1266, 1271 (Del. 2016).
[4] *Thomas v. State*, 467 A.2d 954, 958 (Del.1983) (quoting *Tice v. State*, 382 A.2d 231, 233 (Del. 1977)).

5

correct statement of law and was not confusing or speculative. As to Harris' claim of prejudice, the Superior Court gave a limiting instruction to the jury. This Court has repeatedly upheld flight instructions when supported by the evidence.[5]

(11) Because Harris only objected to the flight instruction, we review the other instructions for plain error.[6] Plain error "is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[7] "When reviewing for plain error it is important to note that [a] defendant is not entitled to a particular instruction, but has an unqualified right to a correct statement of the substance of the law."[8] Harris does not identify, and we do not find, any misstatements of law in the jury instructions on constructive possession and the unanimous verdict requirement. There is no plain error.

(12) As to the stipulation, the parties stipulated that Harris had a felony conviction for purposes of the PFBPP and PABPP charges. The Superior Court noted the stipulation in the jury instructions and further instructed the jury to limit

---

[5] *See, e.g.*, *Robertson*, 41 A.3d at 409 ("This Court has repeatedly upheld the propriety of flight instructions where there is evidence of flight supporting an inference that defendant fled out of consciousness of guilt."); *Thomas v. State*, 467 A.2d 954, 958 (Del. June 16, 1983) (upholding flight instruction where the defendants ran from the police several hours after the robbery).
[6] Supr. Ct. R. 8.
[7] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[8] *Lowther v. State*, 104 A.3d 840, 846 (Del. 2014) (internal quotation marks and citations omitted).

6

their consideration of the previous felony conviction to the PFBPP and PABPP charges and not to infer that Harris was a bad person or more likely to have committed the alleged crimes. A trial court may not exclude a stipulated fact from the jury's consideration when the stipulated fact is an element of the crime as it was here.[9] If Harris wishes to challenge his counsel's agreement to the stipulation, he will need to assert an ineffective assistance of counsel claim in a motion for postconviction relief under Superior Court Criminal Rule 61.[10]

(13) Harris next contends that the Superior Court should have held a hearing on a juror's admission that he ignored the Superior Court's direction not to speak to anyone about the trial. Harris did not raise this claim below so we review for plain error.[11] At the beginning of the third day of trial, the Superior Court judge asked the jurors if they had abided by his previous admonitions, which included not talking to anyone about the case.

(14) When one of the jurors indicated that he had not abided by the admonitions, the Superior Court asked him if he had abided by the admonitions and the juror stated no. The Superior Court judge thought the juror then indicated yes and continued with the proceedings. The parties asked for a sidebar and requested

---

[9] *Robinson v. State*, 2013 WL 5782929, at *2 (Del. Oct. 25, 2013) (citing *United States v. Higdon*, 638 F.3d 233, 242 (3d Cr. 2011)).
[10] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994) (declining to consider ineffective assistance of counsel claim on direct appeal).
[11] Supr. Ct. R. 8.

7

clarification of the juror's response. The jury was excused and the juror in question appeared before the court. When asked if he had spoken to anyone about the case or done any research, the juror said no. The juror stated that he had abided by the Superior Court's admonitions. In response to the Superior Court's inquiry regarding whether either party wished to make an application, both parties stated no. Under these circumstances, there is no plain error. When there was confusion regarding the juror's response to whether he had abided by the admonitions, the Superior Court investigated the matter further. The juror clearly stated that he abided by the Superior Court admonitions and had not spoken to anyone about the case. Further action was not required.

(15)   Harris next argues that the Superior Court should not have admitted the gun into evidence because it was identified as a Hi-Point firearm in pretrial proceedings and as a Smith & Wesson firearm at trial. We review for plain error because Harris did not raise this claim below.[12]  The arrest warrant referred to the recovery of a black .40 caliber semi-automatic handgun. The handgun was also described as a Hi-Point Arms firearm.

(16)   At trial, the police officer who recovered the weapon described it as a Hi-Point Arms JCP .40 caliber black handgun and as a black JCP .40-caliber Smith & Wesson firearm. According to the State, the handgun is manufactured by Hi-Point

_____
[12] Supr. Ct. R. 8.

8

Arms and holds .40 caliber Smith & Wesson cartridges. The police officer who recovered the handgun on July 26, 2016 identified the handgun shown to her at trial, in an evidence bag with her handwriting, as the handgun she had found on July 26th. The police officer who tested the gun for fingerprints and DNA testified that the gun admitted into evidence was the gun he tested. Under these circumstances, the references to different brand names did not make admission of the handgun plain error.

(17) Harris next claims that the State concealed and tampered with evidence that was favorable to his defense. He did not raise this claim below so we review for plain error.[13] In making this claim, Harris fails to identify the evidence, how it was helpful to him, or how it was tampered with or concealed. Under these circumstances, there is no plain error.

(18) Harris also argues that he was deprived of materials he needed for this appeal. He does not identify these materials, but it appears he filed motions for additional discovery. The record on appeal is limited to the Superior Court record.[14] Harris has not shown a basis for additional discovery or that the Superior Court or State were obligated to provide him additional materials for this appeal.[15]

---

[13] Supr. Ct. R. 8.
[14] Supr. Ct. R. 9.
[15] Harris' appendix includes transcript pages from each day of trial showing that he did receive the transcripts.

9

(19) Finally, Harris contends that the Superior Court ignored his pro se filings, including a request to represent himself, and denied his request for additional time to prepare for trial. Under Superior Court Criminal Rule 47, "[t]he court will not consider pro se applications by defendants who are represented by counsel unless the defendant has been granted permission to participate with counsel in the defense." Harris was represented by counsel through pretrial proceedings, trial, and sentencing. The record does not reflect that he was granted permission to participate with his counsel in the defense. Thus, the Superior Court was not required to consider Harris' pro se filings.

(20) As to Harris' claim that he sought to represent himself, the record reflects that Harris did not file a motion to represent himself in the Superior Court until after sentencing. Harris was permitted to represent himself in this appeal. There was no error by the Superior Court. Nor did the Superior Court err in denying Harris' request for a continuance of trial on the first day of trial. Harris' counsel did not make such a request and Harris has not identified any reason a continuance was necessary.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice

10