IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JACKIE COSDEN, | § | |
| | § | |
| Defendant Below, | § | No. 210, 2023 |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE | § | Cr. ID Nos. 2009013056 & |
| | § | 2205008772 |
| Appellee. | § | |

Submitted: February 14, 2024
Decided: April 29, 2024

Before **SEITZ**, Chief Justice; **TRAYNOR**, and **LEGROW**, Justices.

### **ORDER**

After considering the parties' briefs, the record on appeal, and the arguments of counsel, it appears to the Court that:

(1) Defendant Below-Appellant Jackie Cosden seeks to vacate his convictions for Burglary First Degree, Offensive Touching, Criminal Mischief Under $1,000, Terroristic Threatening, and Strangulation. Cosden's convictions arose from a domestic violence incident involving his girlfriend, Sequoia Warren. During trial, the State presented evidence that Cosden left the crime scene after learning that police had been called and that he later attempted to flee from police when they arrived at his father's residence. Based on that evidence, the Superior Court issued a flight instruction to the jury over Cosden's objection. On appeal,

1

Cosden challenges both the trial court's decision to issue the flight instruction and the language of the instruction itself.

(2) Cosden first argues that the trial court's decision to issue the flight instruction was based on the State's inaccurate representation that the charges at trial were Cosden's only "active case" at the time of his arrest. In Cosden's view, had the trial court been made aware that he had another "active case," giving him another reason to flee from police, the court would not have issued the flight instruction. Second, Cosden contends that the flight instruction's language was a comment on the evidence in violation of Del. Const. art. IV, § 19. We conclude that neither argument has merit, and we therefore affirm Cosden's convictions.

**FACTUAL AND PROCEDURAL BACKGROUND**

(3) On September 26, 2020, shortly after midnight, Warren and her friend, Alsanarda Carr, drove to Warren's apartment following a night out together. When the two friends arrived at Warren's apartment, Cosden approached their car and began yelling at Warren. Warren and Carr drove away, and when they returned a few minutes later, it appeared that Cosden had left the apartment complex.

(4) Warren and Carr entered Warren's apartment alone. While they were in Warren's bedroom, the two women heard someone attempting to forcibly enter through the apartment's front door. Carr testified that, after hearing the noise, she and Warren attempted to barricade the door with a dresser, but they were unable to

2

do so. Cosden entered Warren's apartment by force and continued yelling at her. According to Carr, as soon as he broke through the door, Cosden slapped and punched Warren before putting his hands around her throat.

(5) Carr testified that during the attack, Cosden threatened to kill them both if Carr called 9-1-1. Because of Cosden's threat, Carr discreetly called 9-1-1, put her phone down, and allowed the 9-1-1 operator to listen. At trial, the State played for the jury a recording of the 9-1-1 call. Cosden could be heard telling Carr that Warren was not okay because she was "getting her a-- whooped." He yelled that he intended to "f--- [Warren] up" every time he saw her. Cosden eventually stopped his attack, at which point Carr told him that the police were on their way, and he left the apartment.

(6) Officer James Kiser and an EMT responded to Warren's apartment. Officer Kiser observed signs of forced entry, testifying that the door's locking mechanism was "completely knocked off the frame." He described Warren as "clearly shaken-up" and noted small lacerations on her hand, a bite wound, bruising, and faint redness around her neck. Warren told the EMT that the marks on her body were from biting and scratching. Despite the EMT's recommendation, Warren refused to go to the hospital.

(7) Officer Kiser was unable to locate Cosden immediately after the incident at Warren's apartment. At 5:40 a.m. on September 26, 2020, Officer Kiser

obtained a warrant (the "First Warrant") for Cosden's arrest for Burglary Second Degree, Strangulation, Terroristic Threatening, Assault Third Degree, Offensive Touching, and Criminal Mischief Under $1,000. Those were the charges for which Cosden later went to trial and that he now challenges on appeal.

(8) Cosden remained at large and continued to text Warren throughout that day. At 5:07 p.m., Cosden texted Warren saying "B---- ima kill you…" Warren called the police and showed them the text message. At 8:53 p.m. on September 26, 2020, police obtained another warrant (the "Second Warrant") for Cosden's arrest on one separate charge of Terroristic Threatening arising from the text message. Both the First and Second Warrants, issued less than fourteen hours apart, involved acts perpetrated by Cosden against Warren on the same day.

(9) Sixteen days after the domestic violence incident, on October 12, 2020, police located Cosden at his father's house and arrested him based on the First and Second Warrants. When Officer Kiser arrived at the house, Cosden looked right at him before fleeing out the back door. Shortly thereafter, Officer Kiser apprehended Cosden, who told Officer Kiser that he "knew it was stupid" to run.

(10) During Officer Kiser's trial testimony, the State asked him what occurred when he went to arrest Cosden on October 12th. This line of questioning prompted an objection from Cosden's trial counsel. At sidebar, the State informed the trial court that, although Cosden did have an unrelated "pending case," the

4

charges at trial were his "only active case" at the time of his arrest. This was incorrect. At the time Cosden fled from Officer Kiser, the First and Second Warrants were both active. The State then informed the trial court that the testimony was relevant because the State intended to request a flight instruction. Cosden objected, arguing that because of the passage of time between the domestic violence incident and his eventual arrest, it was unknown what caused him to flee. The trial court reasoned that "there [was] nothing else that anyone knew of that [Cosden] was wanted for at the time," and the Court therefore allowed limited testimony from Officer Kiser regarding Cosden's flight.

(11) The trial court later granted the State's request for a flight instruction over Cosden's objection. At the prayer conference, the trial court explained that, because there were disputed contentions as to why Cosden fled, the parties were free to argue "the weight of that evidence and whether they believe there is some disputed reasons as to why [Cosden fled]." Neither party, however, commented on Cosden's flight during their closing arguments to the jury. Cosden did not object to the flight instruction's phrasing or propose an alternative instruction. On appeal, Cosden renews his argument that the evidence did not support a flight instruction in this case. He additionally contends for the first time that the instruction's wording violated the Delaware Constitution.

5

## ANALYSIS

(12) "This Court reviews *de novo* a trial court's decision to issue a jury instruction over the defendant's objection."[1] This Court also considers whether the instructions, examined as a whole, correctly stated the law.[2] When, however, objections to jury instructions are not fairly preserved in the trial court, we will "review[] the content of jury instructions for plain error."[3] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[4] "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[5]

**A. The Superior Court did not err in giving the jury a flight instruction based on the evidence presented at trial.**

(13) Cosden's first argument on appeal is predicated on his contentions that: (i) had the State properly represented the existence of the Second Warrant, the trial

---

[1] *Robertson v. State*, 41 A.3d 406, 408 (Del. 2012).

[2] *Claudio v. State*, 585 A.2d 1278, 1282 (Del. 1991).

[3] *Dupree v. State*, 295 A.3d 1099, 2023 WL 2783164, at *3 (Del. 2023) (TABLE) (quoting *Brooks v. State*, 40 A.3d 346, 351 (Del. 2012)).

[4] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

[5] *Id.*

6

court would not have issued the flight instruction; and (ii) it was "just as likely" that Cosden was fleeing from the Second Warrant as it was that he was fleeing from the First Warrant. But under the unique facts of this case, the trial court did not err in holding that the evidence presented at trial supported the jury instruction related to Cosden's flight.

(14) A defendant's motive for fleeing is a question of fact for the jury.[6] Evidence of a defendant's flight from the crime scene or evasion of arrest following the commission of a crime is generally admissible to show consciousness of guilt.[7] This Court has held that a flight instruction is proper "where there is evidence of flight or concealment and the evidence reasonably supports an inference that defendant fled because 'of a consciousness of guilt and a desire to avoid an accusation based thereon, or for some other reason. . . .'"[8]

(15) Here, Cosden fled from Warren's apartment—the crime scene— immediately after learning that the police were on their way. He then fled when Officer Kiser located Cosden two weeks later at his father's house. When Officer Kiser ultimately apprehended him, Cosden stated that he "knew it was stupid" to run. Cosden does not dispute that this evidence, standing alone, constituted a

---

[6] *Tice v. State*, 382 A.2d 231, 233 (Del. 1977).

[7] *Robertson*, 41 A.3d at 409; *Tice*, 382 A.2d at 233.

[8] *Thomas v. State,* 467 A.2d 954, 958 (Del. 1983) (citing *Tice*, 382 A.2d at 233).

7

sufficient factual basis to support a flight instruction. Instead, he argues that the Second Warrant's existence renders unreasonable any inference that he fled because of the charges relating to the incident at Warren's apartment. We disagree.

(16) The charges in the First and Second Warrants were not wholly unrelated; to the contrary, they stemmed from incidents occurring on the same day and involving the same victim. The First Warrant was based on the domestic violence incident between Cosden and Warren and was issued in the early morning hours of September 26, 2020. Police obtained the Second Warrant later that night based on a text message that Cosden sent to Warren in which he threatened to kill her mere hours after he fled from her apartment.

(17) Although the State incorrectly informed the trial court that Cosden only had one "active case" at the time of his arrest, that mistaken statement of fact does not render the trial court's flight instruction improper. Even if the trial court had been made aware of the Second Warrant, the related nature of the events on September 26, 2020, including the fact that they occurred on the same day and involved the same victim, supported a reasonable inference that Cosden fled because he knew that police had been called to Warren's apartment and he wanted to avoid arrest for that incident. The record therefore supports the trial court's decision to issue a flight instruction.

**B. The flight instruction given to the jury did not amount to plain error.**

(18) Cosden's second argument on appeal is that the particular flight instruction given in this case was unconstitutional. Del. Const. art. IV, § 19 provides that "[j]udges shall not charge juries with respect to matters of fact, but may state the questions of fact in issue and declare the law."[9] The trial court issued the following instruction to the jury:

> In this case, the State contends that the defendant evaded arrest and took flight following the commission of or after committing the offenses charged in the indictment. Evidence of evasion of arrest and flight is admissible in a criminal case as a circumstance tending to show consciousness of guilt. You may consider any evidence for this limited purpose only. You may not consider evidence of evasion of arrest or flight as poof that the defendant is a bad person and, therefore, probably committed the offenses charged in the indictment. You may use this evidence only to help you in deciding whether the defendant committed the offenses contained in the indictment. The evidence of evasion of arrest or flight, if proved, may be considered by you in light of all the facts proven. Whether or not such evidence shows consciousness of guilt and the significance to be attached to such evidence are matters solely for your determination.[10]

(19) On appeal, Cosden argues that this instruction commented on the evidence in violation of Del. Const. art. IV, § 19 in three ways: (i) the phrase "tending to show guilt" suggested a heightened likelihood of guilt; (ii) the language highlighted only one permissible inference—guilt; and (iii) the instruction failed to recognize that consciousness of guilt was not "all or nothing."

---

[9] Del. Const. art. IV, § 19.

[10] App. to Opening Br. at A387-88 (Trial Tr.).

(20) At trial, Cosden did not object to the instruction based on Del. Const. art. IV, § 19. Although this Court generally reviews constitutional issues *de novo*, constitutional issues that are not raised in the trial court are reviewed for plain error.[11]

(21) To begin, we note that Cosden has not argued that flight instructions are *per se* unconstitutional under the Delaware Constitution. In *Robertson v. State*,[12] this Court rejected the defendant's contention that flight instructions necessarily violate Del. Const. art. IV, § 19, and Cosden has not asked us to revisit that ruling. As the State correctly points out—and as Cosden concedes—the instruction at issue on appeal is substantively similar to the instruction upheld by this Court in *Robertson* and the flight instruction provided in Delaware's pattern criminal jury instructions.[13] Cosden nevertheless contends that our decision in *Robertson* did not pass on the precise wording of the instruction and only addressed the constitutionality of flight instructions generally. Cosden now challenges the instruction's wording, specifically whether the language of the trial court's instruction improperly commented on the facts. We hold that the instruction's wording was not so clearly prejudicial to Cosden's substantial rights as to jeopardize the trial's fairness and integrity.[14] Accordingly, we affirm the challenged instruction.

---

[11] *Nance v. State*, 903 A.2d 283, 285 (Del. 2006).

[12] 41 A.3d at 409.

[13] *Id*. at 408.

[14] *Wainwright*, 504 A.2d at 1100.

(22) First, Cosden argues that this jury instruction violated Del. Const. art. IV, § 19 because the words "tending to show guilt" suggest a heightened likelihood of guilt instead of framing guilt as one permissible inference. This argument, however, misquotes the challenged flight instruction, which described flight as "a circumstance tending to show consciousness of guilt."[15] Labeling the legal significance of Cosden's flight as one circumstance that "tend[ed] to show consciousness of guilt" was not a comment on the evidence.

(23) Second, Cosden contends that the instruction "highlights one permissible inference—guilt—over all others."[16] This assertion is misplaced when the instruction is considered as a whole.[17] In the last paragraph, the challenged instruction advised the jury that flight evidence "may be considered in light of all of the facts proven," and that whether Cosden's flight showed his consciousness of guilt were matters solely for the jury's determination. The trial court did not limit the jury's inference exclusively to guilt; rather, by stating the questions of fact at issue and declaring the applicable law, the trial court properly reserved issues of fact for the jury.

---

[15] App. to Opening Br. at A388 (Trial Tr.).

[16] Opening Br. at 13.

[17] *Claudio*, 585 A.2d at 1282.

11

(24) Finally, Cosden argues that the court's flight instruction improperly generalized consciousness of guilt as "all or nothing" because it "suggested to the jury that Cosden fled because of guilt of 'the offenses charged in the indictment.'"[18] In Cosden's view, had the jury been informed of the Second Warrant, it may have reached a different conclusion regarding the significance of the flight evidence. But nothing prevented trial counsel from arguing to the jury that Cosden may have fled for reasons other than the charges being tried. Further, there is nothing in the record to indicate that Cosden proposed alternative language or sought changes to the proposed instruction. Because the language in the instruction did not clearly prejudice Cosden's rights under the Delaware Constitution, the trial court did not commit plain error by instructing the jury in the manner that it did.

For the foregoing reasons, we conclude that there is no merit to Cosden's appeal. NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice

---

[18] Opening Br. at 12-13.