IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HAKEEM WATSON, | § | |
| | § | No. 181, 2024 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 2301003709A/B |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: February 12, 2025
Decided: April 14, 2025

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

## **ORDER**

After careful consideration of the parties' briefs and the record on appeal, and following oral argument, it appears to the Court that:

(1)    A police officer stopped a car, suspecting that its tinted windows did not comply with Section 4313 of the Delaware Motor Vehicle Code.[1]  As soon as the car came to a stop, Appellant Hakeem Watson exited from the car's passenger-side door and ran.  As Watson exited from the car, the officer saw Watson's "side profile."  The officer gave chase in his patrol car while Watson fled on foot.  During

---

[1] *See* 21 *Del. C.* § 4313(c) ("No person shall operate any motor vehicle on any public highway, road or street which does not conspicuously display a certificate by the manufacturer of any 'after manufacture' window tinting material which may have been installed that such window tinting material meets the requirement of [Federal Motor Vehicle Safety Standard] 205 in effect at the time of the vehicle's manufacture."); *see also Stafford v. State*, 59 A.3d 1223, 1226 n.1 (Del. 2012) (stating that Section 4313 restricts "the permissible areas and amount of window tint").

the pursuit, the officer could only observe Watson from behind. While running, Watson pulled a firearm from the front of his person and tossed it over a fence. The officer eventually caught up to Watson, arrested him, and retrieved the firearm. Watson was charged with carrying a concealed deadly weapon ("CCDW") and resisting arrest.[2] His case proceeded to trial. After the close of the evidence, defense counsel moved for judgment of acquittal as to the CCDW charge, which the trial judge denied. Additionally, over defense counsel's objection, the trial judge issued a flight instruction to the jury, explaining to the jury that it could infer that Watson's flight showed "consciousness of guilt" for possessing a firearm. After deliberating, the jury found Watson guilty of both charges.

(2)  Watson now appeals the trial judge's denial of his motion for judgment of acquittal and issuance of the flight instruction. As explained further below, we reverse the trial judge's denial of Watson's motion for judgment of acquittal. Additionally, we conclude that Watson's flight instruction claim is moot because that instruction was relevant only to the CCDW charge, and, in this Order, we reverse Watson's conviction on that charge.

(3)  During the evening of January 8, 2023, Officer Logan Crumlish of the Wilmington Police Department noticed a black Chevrolet Impala with tinted

---

[2] In a separate trial, the same jury found Watson guilty of possession of a firearm by a person prohibited and possession of ammunition by a person prohibited.

2

windows while on patrol in his marked patrol car.[3]  Officer Crumlish conducted a

database inquiry to determine whether the Impala had a tint waiver.[4]  Finding no tint

waiver on file, Officer Crumlish activated his patrol car's emergency lights to

conduct a stop of the Impala.[5]  As soon as the Impala pulled over, a person—later

identified as Watson—exited from the Impala's passenger door and ran from the

scene.[6]  Officer Crumlish briefly observed Watson's "side profile" when Watson

exited from the Impala and ran.[7]  Officer Crumlish activated his sirens and pursued

Watson in his patrol car.[8]  During the pursuit, Officer Crumlish observed Watson

from behind through his windshield.[9]  "As [Watson] was running . . ., he began to

slow down, at which time [Officer Crumlish] saw him pull a black object from the

front of his person and throw it over a fence, and then continu[e] running[.]"[10]  After

observing Watson toss the black object, Officer Crumlish maneuvered his patrol car

---

[3] App. to Opening Br. at A44–45.  Unless otherwise indicated, the facts are drawn from the trial transcript.

[4] *Id.* at A45; *see also, e.g.*, 21 *Del. C.* § 4313(d) (stating that a tint waiver is available under certain circumstances).

[5] App. to Opening Br. at A46.

[6] *Id.*

[7] *Id.* at A54.

[8] *Id.* at A47, A54.

[9] *Id.* at A55.

[10] *Id.* at A47 (Officer Crumlish Testimony).

3

in front of Watson.[11]  With nowhere left to run, Watson got down on the ground and Officer Crumlish arrested him.[12]

(4)  Shortly after arresting Watson, Officer Crumlish returned to the area where he had seen Watson toss the black object over a fence.[13]  Officer Crumlish located a black firearm about ten feet from the fence—he found no other black objects in the area.[14]  There was 9mm ammunition in the firearm's magazine and one round racked in its chamber.[15]

(5)  A grand jury indicted Watson on five charges:  possession of a firearm by a person prohibited, possession of ammunition by a person prohibited, CCDW, resisting arrest, and illegal possession of a controlled substance.[16]  The State later dismissed the controlled substance charge before trial.[17]  On the remaining charges, Watson moved to sever the CCDW and resisting arrest charges from the person prohibited charges.[18]  The Superior Court granted that motion.[19]

---

[11] *Id.* at A48.

[12] *Id.* at A48–49.

[13] *Id.* at A50.

[14] *Id.* at A50–51.

[15] *Id.* at A51.

[16] *Id.* at A10–12 (Indictment).

[17] *Id.* at A36.

[18] *Id.* at A3–4 (Dkt. 17) (Superior Court Docket).

[19] *Id.* at A4 (Dkt. 23) (Superior Court Docket).  In granting the motion to sever, the court noted that the State previously stated that it would file a notice of *nolle prosequi* for the CCDW charge. *See id.*  The State ultimately did not file a notice for the CCDW charge.  *Id.*

4

(6)     The State tried the CCDW and resisting arrest charges to a jury (the "A-Trial"). Before the A-Trial started, the State told the trial judge that it intended to seek a flight instruction.[20] Defense counsel objected, arguing that "it's prejudicial under [Delaware Rule of Evidence] 403, and defense counsel believes [it] unfairly comments on the evidence here, and instructs the jury to consider something that they should be left to their own devices to consider if they think that's part of the fact pattern here."[21] The trial judge overruled defense counsel's objection to the flight instruction.[22] During both its opening statement and closing argument, the State highlighted its theory that Watson "ran because he had a gun."[23]

(7)     During the A-Trial, three witnesses testified for the State—Officer Crumlish, a Wilmington Police Department forensic detective, and a Delaware Division of Forensic Sciences DNA analyst. The State additionally published several exhibits to the jury, including Officer Crumlish's body-worn camera recording depicting his pursuit and arrest of Watson and his retrieval of the firearm.[24] Defense counsel called no witnesses. Before closing arguments, defense counsel

---

[20] *Id.* at A35.

[21] *Id.*

[22] *Id.* at A41.

[23] *Id.* (Opening Statement) (Prosecutor: "Members of the jury, this is a straightforward case. The defendant ran because he had a gun."); *id.* at A81 (Closing Argument) (Prosecutor: "Good morning. The defendant Hakeem Watson on January 8th, 2023 ran because he had a gun.").

[24] *Id.* at A50–51.

moved for judgment of acquittal under Superior Court Criminal Rule 29(a) as to the CCDW charge, arguing that the evidence presented was insufficient to show that Watson concealed the firearm.[25] The trial judge denied the motion, stating that "I think it's close, but I'm going to allow the trier of fact, the jury, to determine" whether the evidence sufficiently established that Watson concealed the firearm.[26] The jury found Watson guilty of CCDW and resisting arrest.[27]

(8)    On appeal, Watson argues that the trial judge committed reversible error in denying his motion for judgment of acquittal as to the CCDW charge because the evidence at trial did not establish that Watson concealed the firearm. Watson also contends that the trial judge violated Article IV, § 19 of the Delaware Constitution by issuing the flight instruction, which, according to Watson, amounted to an improper comment on the evidence. The State responds that Officer Crumlish's testimony that he saw Watson from the side and from behind without

---

[25] *Id.* at A78–79.

[26] *Id.* at A79.

[27] *Id.* at A96 (A-Trial Verdict). After the A-Trial, the parties proceeded with the PFBPP and PABPP charges before the same jury (the "B-Trial"). During the B-Trial, the parties stipulated that Watson was a person prohibited from possessing a firearm and ammunition during the relevant time. *Id.* at A97. After the parties presented arguments to the jury, the jury found Watson guilty of PFBPP and PABPP. *Id.* at A103–04 (B-Trial Verdict). Before sentencing, the State moved to declare Watson a habitual offender, which the Superior Court granted. *Id.* at A8 (Dkt. 13) (Superior Court Docket); Ex. C to Opening Br. at 3 (Sentence Order). The Superior Court sentenced Watson to 20 years of incarceration, followed by probation. Ex. C to Opening Br. at 1–2 (Sentence Order). Specifically, the court sentenced Watson to: 20 years of incarceration for PFBPP; 8 years of incarceration, suspended for 18 months of probation for PABPP; 8 years of incarceration, suspended for 18 months of probation for CCDW; and a monetary fine for resisting arrest. *Id.*

6

seeing a firearm was sufficient for a rational trier of fact to find, beyond a reasonable doubt, that Watson concealed it. The State also contends that the evidence at trial supported issuing the flight instruction and that it was not an improper comment on the evidence because the instruction was "substantially similar" to other flight instructions upheld by this Court.

(9) We review *de novo* the Superior Court's denial of a motion for judgment of acquittal "to determine whether a rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements, beyond a reasonable doubt."[28] We do not distinguish between direct and circumstantial evidence when conducting this inquiry.[29]

(10) Under 11 *Del. C.* § 1442(a), "[a] person is guilty of carrying a concealed deadly weapon when the person carries concealed a deadly weapon upon or about the person without a license to do so[.]" There is no dispute that Watson carried the firearm on his person without a license to do so. The critical question is whether the evidence at trial was sufficient for a rational trier of fact to find beyond a reasonable doubt that Watson concealed the firearm. It was not.

(11) Our law defines concealment as "hidden from the ordinary sight of another person . . . [meaning] the casual and ordinary observation of another in the

---

[28] *Hines v. State*, 292 A.3d 91, 96–97 (Del. 2023) (quoting *Howell v. State*, 268 A.3d 754, 775 (Del. 2021)).

[29] *Id.* at 97.

7

normal associations of life."[30] Officer Crumlish testified that he briefly saw a side profile of Watson when Watson exited from the Impala and ran. Officer Crumlish also testified that he saw Watson from behind while pursuing Watson in his patrol car, including the moment that Watson tossed the firearm. Officer Crumlish's body-worn camera recording shows Watson wearing a black coat on the night of the arrest. The evidence, when viewed in the light most favorable to the State, established that Officer Crumlish observed Watson from two vantage points—the side and behind—at night and from his patrol car while Watson fled on foot. But Officer Crumlish testified that he saw Watson "pull a black object from the *front* of his person and throw it over a fence[.]"[31] The evidence here is not sufficient for a rational trier of fact to find beyond a reasonable doubt that Watson hid the firearm from "the ordinary sight of another person."[32] Officer Crumlish did not observe Watson's front—the place on Watson's body where he allegedly concealed the firearm.

(12) Our cases affirming CCDW convictions on sufficiency-of-the-evidence grounds are distinguishable from this case. In *Manuel v. State*, we affirmed a CCDW conviction on sufficiency of the evidence grounds when a detective "seized a

---

[30] *Robertson v. State*, 704 A.2d 267, 268 (Del. 1997) (ellipsis and brackets in original); *see also Taylor v. State* 326 A.3d 686, 2024 WL 3810967, at *3 (Del. Aug. 14, 2024) (TABLE).

[31] App. to Opening Br. at A47 (emphasis added).

[32] *See Robertson*, 704 A.2d at 268.

handgun from [defendant]'s pants pocket" during a pat-down search.[33] In *Goode v. State*, we found witness testimony sufficient to affirm a CCDW conviction when the witness testified that he saw the defendant "pull[] out a pistol from *under* his clothing" and point it at another person.[34] And in *Thomas v. State*, we affirmed a CCDW conviction based on circumstantial and direct evidence.[35] In that case, a building's video surveillance depicted a defendant without a firearm visible on his person leaving the building despite other evidence establishing that the defendant retrieved a firearm from an apartment within that building before leaving.[36] And a witness later "saw [defendant] 'reach for his waistband, reach his arm out . . . and shoot [the victim].'"[37]

(13) In these cases, the evidence established that a person found the weapon concealed on the defendant (*Manuel*), a person saw the defendant pull the weapon from a concealed position to an unconcealed one (*Goode*), and a recording captured the defendant without a weapon visible and a witness later saw that defendant pull a

---

[33] *Manuel v. State*, 186 A.3d 103, 2018 WL 2127136, at *1–2 (Del. May 8, 2018) (TABLE); *see also Woods v. State*, 204 A.3d 1264, 2019 WL 643862, at *4 (Del. Feb. 14, 2019) (TABLE) (affirming CCDW conviction when a police officer testified that "he found [defendant's] pocket knife inside of [defendant's] right front pants pocket").

[34] *Goode v. State*, 136 A.3d 303, 307, 314 (Del. 2016) (emphasis added).

[35] *Thomas v. State*, 207 A.3d 1124, 2019 WL 1380051, at *5 (Del. Mar. 26, 2019) (TABLE). In *Thomas*, defense counsel did not move for judgment of acquittal, so this Court reviewed for plain error. *Id.* at *4. However, this Court also stated that "[t]his [evidence] would suffice to defeat [defendant's] insufficient evidence claim even had he not waived it." *Id.* at *5.

[36] *Id.* at *5.

[37] *Id.* (ellipsis in original).

weapon from his clothing (*Thomas*). The common thread is that the evidence in each case was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the weapon was "hidden from the ordinary sight of another person."[38] Here, by contrast, the evidence established that Officer Crumlish did not observe Watson from the front at any time before Watson tossed the firearm from the front of his person. None of the State's evidence allowed for a conclusion as to how Watson was carrying the firearm in front of his body. Thus, the jury could not find beyond a reasonable doubt that Watson "hid[] [the firearm] from the ordinary sight of another person."[39] We therefore reverse the Superior Court's denial of Watson's motion for judgment of acquittal as to the CCDW charge.

(14) Because we reverse the trial court's ruling on Watson's motion for judgment of acquittal, we need not decide his objection to the flight instruction given by the trial judge. This Court has held that a flight instruction is proper "where there is evidence of flight supporting an inference that defendant fled out of consciousness of guilt."[40] Here, the flight instruction was relevant only to the CCDW charge, not

---

[38] *Robertson*, 704 A.2d at 268.

[39] *Id.*

[40] *Robertson v. State*, 41 A.3d 406, 409 (Del. 2012); *Thomas v. State*, 467 A.2d 954, 958 (Del. 1983) ("A flight instruction is proper where there is evidence of flight or concealment *and* the evidence reasonably supports an inference that defendant fled because 'of consciousness of guilt and a desire to avoid an accusation based thereon, or for some other reason.'" (emphasis in original) (quoting *Tice v. State*, 382 A.2d 231, 233 (Del. 1977))).

10

the resisting arrest charge.[41]  And Watson has not appealed his resisting arrest conviction.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is REVERSED as to the motion for judgment of acquittal and MOOT as to the flight instruction.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice

---

[41] The State's opening statement and closing argument advanced its theory that Watson "ran because he had a gun."  App. to Opening Br. at A41 (Opening Statement) (Prosecutor:  "Members of the jury, this is a straightforward case.  The defendant ran because he had a gun."); *id.* at A81 (Closing Argument) (Prosecutor:  "Good morning.  The defendant Hakeem Watson on January 8th, 2023 ran because he had a gun.").  The flight instruction stated in part that evidence of flight "is admissible as a circumstance tending to show consciousness of guilt."  *Id.* at A92 (Jury Instructions).  The "consciousness of guilt" was, according to the State, connected to Watson having a firearm.  *See* Answering Br. at 8 ("It was reasonable to infer that Watson fled to avoid culpability for the firearm offense.").  CCDW was the only firearm offense in the A-Trial.